No. 22-16413

---

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
_____

KARI LAKE, ET AL.,

*Plaintiffs-Appellants*,

v.

ADRIAN FONTES, ET AL.,

*Defendants-Appellees*.

_____

On Appeal from the United States District Court for the
District of Arizona
No. 2:22-cv-00677-JJT
Hon. John J. Tuchi
_____

## BRIEF OF MARICOPA COUNTY DEFENDANTS-APPELLEES
_____

RACHEL H. MITCHELL
MARICOPA COUNTY ATTORNEY

Thomas P. Liddy
Joseph J. Branco
Joseph E. La Rue
Karen J. Hartman-Tellez
    Deputy County Attorneys
MARICOPA COUNTY ATTORNEY'S OFFICE
CIVIL SERVICES DIVISION
225 W. Madison Street
Phoenix, AZ 85003
ca-civilmailbox@mcao.maricopa.gov

*Attorneys for Maricopa County Defendants-Appellees*

*Additional counsel on next page

Emily Craiger (Bar No. 021728)
emily@theburgesslawgroup.com
THE BURGESS LAW GROUP
3131 East Camelback Road, Suite 224
Phoenix, Arizona 85016
Telephone: (602) 806-2100

March 30, 2023

---

**Table of Contents**

Table of Contents .................................................................................... i

Table of Authorities ............................................................................... ii

Introduction ............................................................................................1

Statement of Jurisdiction.........................................................................1

Statement of the Issue .............................................................................2

Statement of Pertinent Statutory and Constitutional Provisions .............2

Statement of the Case..............................................................................2

Summary of the Argument.......................................................................5

Standard of Review .................................................................................5

Argument.................................................................................................6

      I.      The district court properly dismissed Challengers' claims because they lack Article III standing................................................6

Conclusion ............................................................................................18

# Table of Authorities

## Cases

*Baker v. Carr*,
   369 U.S. 186 (1962)..............................................................7

*Biotics Research Corp. v. Heckler*,
   710 F.2d 1375 (9th Cir. 1983) ............................................6

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
   598 F.3d 1115 (9th Cir. 2010) ...........................................2

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013)..............................................................8

*Curling v. Kemp*,
   334 F. Supp. 3d 1303 (N.D. Ga 2018)....................... 15, 16

*DaimlerChrysler Corp. v. Cuno*,
   547 U.S. 332 (2006)..............................................................7

*Daniels–Hall v. Nat'l Educ. Ass'n*,
   629 F.3d 992 (9th Cir. 2010) .............................................11

*Election Integrity Project California, Inc. v. Weber*,
   No. 21-56061, 2022 WL 16647768 (9th Cir. Nov. 3, 2022)...................... 16, 17

*Ex parte Young*,
   209 U.S. 123 (1908)........................................................1, 2

*Fed'n of African Am. Contractors v. City of Oakland*,
   96 F.3d 1204 (9th Cir. 1996) ............................................10

*Gill v. Whitford*,
   —— U.S. ——, 138 S. Ct. 1916 (2018)..........................7, 8

*Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*,
   12 F. Supp. 2d 1035 (C.D. Cal. 1998) ..............................11

*Lance v. Coffman*,
   549 U.S. 437 (2007)..............................................................8

*Land v. Dollar*,
   330 U.S. 731 (1947)..............................................................6

*Lee v. City of L.A.*,
   250 F.3d 668 (9th Cir. 2001) ............................................11

ii

*Lujan v. Defs. of Wildlife*,
　504 U.S. 555 (1992)...................................................................7, 8

*Mir v. Little Co. of Mary Hosp.*,
　844 F.2d 646 (9th Cir. 1988) ............................................11

*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*,
　429 U.S. 274 (1977)............................................................10

*Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A.*,
　20 F.3d 987 (9th Cir. 1994) ..............................................6

*Peter Starr Prod. Co. v. Twin Continental Films, Inc.*,
　783 F.2d 1440 (9th Cir. 1986) ..........................................5

*Raines v. Byrd*,
　521 U.S. 811 (1997)............................................................8

*Safe Air for Everyone v. Meyer*,
　373 F.3d 1035 (9th Cir. 2004) ..........................................10

*Savage v. Glendale Union High Sch. Dist. No. 205*,
　343 F.3d 1036 (9th Cir. 2003) ..........................................10

*Schulz v. Kellner*,
　2011 WL 2669456 (N.D.N.Y. Jul. 7, 2011) .....................9

*Seven Resorts, Inc. v. Cantlen*,
　57 F.3d 771 (9th Cir. 1995) ..............................................5

*Spokeo, Inc. v. Robins*,
　578 U.S. 330 (2016)............................................................7, 8

*Steel Co. v. Citizens for a Better Environment*,
　523 U.S. 83 (1998)..............................................................7

*Stein v. Cortes*,
　223 F. Supp. 3d. 423 (E.D. Pa. 2016)...............................9

*Warth v. Seldin*,
　422 U.S. 490 (1975)............................................................7, 8

**Constitutional Provisions**

Ariz. Const. art. II, § 4 .............................................................1, 3

U.S. Const. amend. XI ..............................................................1, 4

U.S. Const. amend. XIV, § 1 ....................................................1, 3

U.S. Const. art. III ..........................................................2, 6, 7, 17

iii

U.S. Const. art. III, § 2, cl. 1 .............................................................7

**Statutes**

28 U.S.C. § 2201 ...........................................................................3

42 U.S.C. § 1983 ...................................................................1, 2, 3

Ariz. Rev. Stat. § 16-442(B) .......................................................1, 3

Ariz. Rev. Stat. § 16-445(D) ...........................................................1

Ariz. Rev. Stat. § 16-446(B) ...........................................................1

Ariz. Rev. Stat. § 16-452(A) .......................................................1, 3

Ariz. Rev. Stat. § 16-452(B) .......................................................1, 3

Ariz. Rev. Stat. § 16-452(D) .......................................................1, 3

Ariz. Rev. Stat. § 16-462 .............................................................13

Ariz. Rev. Stat. § 16-468(2) .........................................................13

Ariz. Rev. Stat. § 16-502 .............................................................13

**Rules**

9th Cir. R. 30-1 ............................................................................4

Fed. R. Civ. P. 12(b)(1)....................................................... *passim*

Fed. R. Civ. P. 12(b)(6)............................................................4, 10

## Introduction

Plaintiffs-Appellants Kari Lake and Mark Finchem ("Challengers") brought this action under 42 U.S.C. § 1983 and *Ex parte Young*, 209 U.S. 123 (1908), and its progeny. Specifically, Challengers alleged that the Arizona Secretary of State violated Arizona Revised Statutes ("A.R.S.") §§ 16-452(A), (B), and (D); § 16-446(B); § 16-445(D); and § 16-442(B). They also alleged that Maricopa and Pima Counties violated A.R.S. § 16-452(A). Challengers further alleged that the Secretary and Counties violated the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution and Article II, § 4 of the Arizona Constitution, the Equal Protection Clause of the Fourteenth Amendment, and the fundamental right to vote as protected by the U.S. Constitution.

Challengers' claims fail as a matter of law because they lack standing. Their conjectural allegations of potential injuries are insufficient to confer subject-matter jurisdiction and were properly dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).

This Court should affirm.

## Statement of Jurisdiction

Maricopa County joins the Statement of Jurisdiction supplied by the Secretary.

## Statement of the Issue

**1.** A plaintiff seeking relief in federal court must establish an injury in fact, the first element of Article III standing. To establish an injury in fact, a plaintiff must show an invasion of a legally protected interest that is concrete, particularized, and actual or imminent; it cannot be conjectural or hypothetical. A complaint that fails to allege facts sufficient to establish standing requires dismissal for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *See, e.g.*, *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1123 (9th Cir. 2010). Did the district court err when it found that Challengers' claimed injuries were too speculative to establish an injury in fact and so dismissed Challengers' claims for lack of subject-matter jurisdiction under Rule 12(b)(1)?

## Statement of Pertinent Statutory and Constitutional Provisions

Maricopa County joins the addendum supplied by the Secretary.

## Statement of the Case

Challengers filed their original Complaint on April 22, 2022 and their First Amended Complaint ("FAC") on May 4, 2022. The FAC claimed violations of federal and state statutory and constitutional law. Challengers brought this action under 42 U.S.C. § 1983 and *Ex parte Young*, 209 U.S. 123 (1908), and its progeny to challenge government officers' "ongoing violation of federal law and [to] seek[] prospective relief" under the equity jurisdiction conferred on federal district courts

by the Judiciary Act of 1789. (ER-107, ¶ 48.) Specifically, they alleged that the Arizona Secretary of State (the "Secretary") violated A.R.S. §§ 16-452(A), (B), and (D); 16-446(B); 16-445(D); and § 16-442(B). (ER-142, ¶¶ 156–61.) They also alleged that Maricopa and Pima Counties (the "Counties") violated A.R.S. §§ 11-251[1] and 16-452 (A). (ER-142–43, ¶¶ 162–65.) Challengers further alleged that the Secretary and Counties violated the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution and Article 2, Section 4 of the Arizona Constitution; the Equal Protection Clause of the Fourteenth Amendment; and the fundamental right to vote as protected by the U.S. Constitution.

Challengers sought declaratory and injunctive relief against the Secretary and Counties pursuant to 42 U.S.C. § 1983, as well as a declaratory judgment pursuant to 28 U.S.C. § 2201. (ER-149, ¶¶ 196–99, 207–11.) Specifically, the FAC requested the district court: (1) "declare it unconstitutional for any public election to be conducted using any model of electronic voting system to cast or tabulate votes"; (2) issue a "preliminary and permanent injunction prohibiting [Appellees] from requiring or permitting voters to have votes cast or tabulated using an electronic voting system"; (3) enter an order requiring Appellees to conduct the Midterm Election consistent with "summary procedures" provided by Challengers and (4) attorney fees, costs and "damages suffered by [Challengers], to be determined at

---

[1]      Challengers withdrew their A.R.S. § 11-251 claim.

3

trial." (ER-150.)

Appellee Maricopa County Board of Supervisors ("Maricopa County") filed a Motion to Dismiss. (2-Cnty-SER-527–47.)[2] The Secretary joined Maricopa County's Motion as did Appellee the Pima County Board of Supervisors ("Pima County"). (SER-8–26; *see also* Doc. 31.)[3] Maricopa County filed its Motion under Federal Rule of Civil Procedure 12(b)(6), arguing that: (1) Challengers' claims were untimely; (2) Challengers failed to allege sufficient factual allegations; and (3) Challengers failed to allege a cognizable legal theory.

The Secretary filed a Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that: (1) Challengers lack standing; (2) the Eleventh Amendment bars Challengers' claims; and (3) Challengers failed to state a cognizable constitutional claim. (SER-8–26.)

Subsequently, five weeks after filing the FAC, Challengers moved for a preliminary injunction on June 15, 2022. (Doc. 50.) On July 21, 2022, the district court held an evidentiary hearing on Appellants' request for preliminary injunction,

---

[2]     To avoid confusion: this Brief refers to the Secretary's Supplemental Excerpts of Record using the abbreviation "SER" and Maricopa County's Supplemental Excerpts of Record using the abbreviation "Cnty-SER," following the nomenclature in the supplemental excerpts themselves.

[3]     The cites to "Doc." refer documents in the district court's CM/ECF docketing system, used for briefs, other memoranda of law, or orders that are not included in the SER but may be helpful as purely background information consistent with Ninth Circuit Rule 30-1.

as well as hearing argument on the Counties' and Secretary's Motions to Dismiss. On August 26, 2022, the District Court issued its Order dismissing Appellants' action in its entirety and denying Challengers' request for a preliminary injunction.[4] (ER-7–27.)

## Summary of the Argument

Challengers seek court intervention to implement their preferred method of ballot tabulation based purely on speculation, conjecture, and unwarranted suspicion. Challengers set forth no actual facts or evidence to support their assertion that tabulation equipment ever has or will incorrectly count ballots in Arizona. Challengers' entire brief is based on the erroneous premise that the court may not weigh evidence when determining whether it has jurisdiction and that the court must take as true facts that are clearly false and contradicted by publicly available information.

## Standard of Review

This Court reviews *de novo* the district court's dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(1). *Seven Resorts, Inc. v. Cantlen*, 57 F.3d 771, 772 (9th Cir. 1995); *see also Peter Starr Prod. Co. v. Twin Continental Films, Inc.*, 783 F.2d 1440, 1442 (9th Cir. 1986) (subject matter jurisdiction of a federal

---

[4]    On appeal, Challengers failed to raise the denial of their preliminary injunction. Any argument concerning this request is waived. *See Padgett v. Wright*, 587 F.3d 983, 986 n.2 (9th Cir. 2009).

court presents a question of law, reviewable *de novo*). Any factual determinations made by the district court in ruling on a motion to dismiss are reviewed for clear error. *Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A.*, 20 F.3d 987, 990 (9th Cir. 1994). Moreover, when considering a motion to dismiss pursuant to Rule 12(b)(1), the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction. *See, e.g., Land v. Dollar*, 330 U.S. 731, 735 n. 4 (1947) ("[W]hen a question of the District Court's jurisdiction is raised . . . the court may inquire by affidavits or otherwise, into the facts as they exist." ); *Biotics Research Corp. v. Heckler*, 710 F.2d 1375, 1379 (9th Cir. 1983) (consideration of material outside the pleadings did not convert a Rule 12(b)(1) motion into one for summary judgment).

## Argument

**I.    The district court properly dismissed Challengers' claims because they lack Article III standing.**

The FAC is premised on Challengers' vague and unsupported assertions that Arizona's use of electronic election equipment permits unauthorized persons to manipulate vote totals without detection, thereby infringing Challengers' right to vote and have the vote counted accurately. The district court correctly found that Challengers' vague, purely speculative assertions were insufficient to confer subject matter jurisdiction.

6

"To ensure that the Federal Judiciary respects the proper—and properly limited—role of the courts in a democratic society, a plaintiff may not invoke federal-court jurisdiction unless he can show a personal stake in the outcome of the controversy." *Gill v. Whitford*, —— U.S. ——, 138 S. Ct. 1916, 1929 (2018) (internal citations omitted). Article III provides that federal courts may only exercise judicial power in the context of "cases" and "controversies." U.S. Const. art. III, § 2, cl. 1; *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559 (1992). For there to be a case or controversy, the plaintiff must have standing to sue. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337–38 (2016) ("*Spokeo II*"). Whether a plaintiff has standing presents a "threshold question in every federal case [because it determines] the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006). A suit brought by a plaintiff without Article III standing is not a "case or controversy," and an Article III federal court therefore lacks subject matter jurisdiction. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 101 (1998).

"[A] plaintiff seeking relief in federal court must first demonstrate . . . a personal stake in the outcome," *Baker v. Carr*, 369 U.S. 186, 204 (1962), distinct from a "generally available grievance about government," *Lance v. Coffman*, 549

7

U.S. 437, 439 (2007) (per curiam). "That threshold requirement ensures that [courts] act as judges, and do not engage in policymaking properly left to elected representatives." *Gill*, 138 S. Ct. at 1923. To establish standing, a plaintiff has the burden of clearly demonstrating that she has: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo II*, 578 U.S. at 338 (quoting *Warth*, 422 U.S. at 518); *accord Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (noting the party asserting jurisdiction bears the burden of establishing subject matter jurisdiction on a Rule 12(b)(1) motion to dismiss).

To establish an injury in fact, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.' " *Spokeo II*, 578 U.S. at 349 (*quoting Lujan*, 504 U.S. at 560). "When we have used the adjective 'concrete,' we have meant to convey the usual meaning of the term—'real,' and not 'abstract.' " *Id.* The plaintiff must establish a "particularized" injury, which means that "the injury must affect the plaintiff in a personal and individual way." *Raines v. Byrd*, 521 U.S. 811, 819 (1997). Moreover, "[a]lthough imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is certainly impending." *Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 409 (2013).

Where a plaintiff has not established the elements of standing, the case must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).

The entire foundation of Challengers' case—the alleged need for court intervention to implement their preferred method of ballot tabulation because they fear invisible, undetectable invaders into Arizona counties' ballot tabulation equipment will improperly manipulate the vote count—is based purely on speculation, conjecture, and unwarranted suspicion. Indeed, the FAC does not contain a single allegation that: (1) any Arizona ballot tabulation equipment has ever been hacked or manipulated or has improperly counted votes, or (2) that any Arizona voters' ballot, including Challengers', has ever been improperly counted by an electronic tabulation machine. The district court properly held that Challengers' fears of invisible, undetectable intrusion into the vote tabulation equipment is purely speculative, at best, and insufficient to support a plausible claim. *See, e.g.*, *Stein v. Cortes*, 223 F. Supp. 3d. 423, 432–33 (E.D. Pa. 2016) (finding no standing where the plaintiff, an unsuccessful candidate, alleged that Pennsylvania's DRE electronic voting machines may be susceptible to hacking); *Schulz v. Kellner*, 2011 WL 2669456, at *7 (N.D.N.Y. Jul. 7, 2011) (allegations that "votes will allegedly not be counted accurately" because of "machine error and human fraud resulting from Defendants' voting procedures" were "merely conjectural and hypothetical" and insufficient to establish standing).

9

Further, contrary to Challengers' assertions, the district court did not improperly reject facts alleged in the Amended Complaint. (Opening Brief ("O.B.") at 48–53.) Indeed, Rule 12(b)(1)[5] authorizes a court to dismiss claims over which it lacks subject-matter jurisdiction. A Rule 12(b)(1) challenge may be either facial or factual. *Safe Air for Everyone v. Meye*r, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial attack, the court may dismiss a complaint when the complaint's allegations and exhibits are insufficient to confer subject-matter jurisdiction. *See Savage v. Glendale Union High Sch. Dist. No. 205*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). In this context, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir. 1996). In contrast, when a court evaluates a factual challenge to jurisdiction, a court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Safe Air for Everyone*, 373 F.3d at 1039 ("In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment."). Here, the district court did not

---

[5] Appellants' claim, that the district court *sua sponte* applied Fed. R. Civ. P 12(b)(1), (O.B. at 47–48), is objectively incorrect. The Secretary's Motion to Dismiss was based both on Rule 12(b)(1) and 12(b)(6). (SER-9.) But even if that were not the case, federal courts are under a continuing duty to confirm their jurisdictional power and are "obliged to inquire *sua sponte* whenever a doubt arises as to [its] existence." *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 278 (1977) (citations omitted).

merely evaluate the facts set forth in the papers: it held a full-day evidentiary hearing, which included testimony from six witnesses, four of whom Challengers offered.

In their brief, Challengers' near-constant refrain is to assert that the district court was required to accept all factual allegations as true, but it is well-settled that courts may disregard allegations in a complaint that are contradicted by matters properly subject to judicial notice. *Mir v. Little Co. of Mary Hosp*., 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v. Consumers Union of U.S., Inc*., 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998). It is likewise well-settled that a court may take judicial notice of public records, including documents accessible on government websites. *See Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001) (noting that the court may take judicial notice of undisputed "matters of public record"); *Daniels– Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010) (taking judicial notice of government published documents hosted on government website).

Here, contrary to Challengers' contentions, those facts for which the district court took judicial notice did not merely dispute their allegations or prove 'disputed' facts. Rather, those facts either contradicted their repeated assertions that were clearly false or addressed facts that they conveniently, entirely failed to address in their FAC. These included, among others, the assertion that Arizona does not use paper ballots (it does), (ER-48, ¶¶ 7; ER-56, ¶¶ 58–60; ER-83–84 ¶ 153); that Arizona's election equipment is not independently tested by experts (it is), (ER-50,

¶ 20; ER-56, ¶ 57; ER-58, ¶ 69); and that Arizona's tabulation results are not subject to vote-verifying auditing (they are), (ER-51, ¶ 23; ER-59, ¶ 72; ER-81–83, ¶ 144–52.) Maricopa County's motion to dismiss addressed each of these provably false allegations in detail, using publicly available and widely circulated information. (2-Cnty-SER-529–33.)

In addition, the allegations in the FAC relating specifically to Maricopa County elections are demonstrably false. For example, the allegation that "[t]he recent [Cyber Ninja's] hand count in Maricopa County, the second largest voting jurisdiction in the United States, offers the Secretary a proof-of-concept and a superior alternative to relying on corruptible electronic voting systems" is untrue. (ER-84, ¶ 155.) As set forth in detail in the motion to dismiss, the Cyber Ninjas counted only two contests (of more than 60 on each ballot), it took them more than three months, it cost millions of dollars, they claim that they went bankrupt as a result, and the hand count results were so problematic the Arizona Senate was forced to purchase paper-counting machines in an attempt to reconcile the hand counts' botched numbers. (2-Cnty-SER-539–40.)

Moreover, the baseless "findings" of the Cyber Ninja's "reports," including those asserted in paragraphs 70, 132, and 164 of the FAC, have been debunked. For instance, Challengers' assertion that the Final Voted file (VM55) contained significant discrepancies is blatantly false, (*see* ER-58–59, ¶ 70); among other

things, the Cyber Ninjas did not understand that there are protected voters who are prohibited by state law from being included in any public voter file. (2-SER-419.) Challengers repeatedly assert that election files were "missing," "cleared," or "deleted." (ER-58–59, ¶ 70; ER-78, ¶ 132; ER-87, ¶ 164.) However, all the hard drives and corresponding data files from the November 2020 General Election were maintained and safely secured by Maricopa County; the files the Cyber Ninjas claimed were missing were either not subpoenaed and so not provided or were not located because of the Cyber Ninjas' ineptitude. (2-Cnty-SER-359.)

Challengers' assertions concerning the use of computerized voting in Arizona also are entirely inaccurate. Arizona does not use computerized voting, and never has. Arizona law requires paper ballots. *See* A.R.S. §§ 16-462 (primary election ballots "shall be printed"), 16-468(2) ("Ballots shall be printed in plain clear type in black ink, and for a general election, on clear white materials"), 16-502 (general election ballots "shall be printed with black ink on white paper").

In addition to the repeated factual misrepresentations, the FAC was riddled with allegations that are entirely unrelated to elections in Arizona. For instance, Paragraphs 73–89, 125–31, 133 and 134 contain allegations concerning elections in Alabama, North Carolina, Nebraska, Texas, Georgia, Wisconsin, Michigan, and Colorado conducted with equipment that is not used in Arizona and so have nothing to do with Arizona and its certified tabulation equipment. (ER-59–67, 77–79.)

Challengers' blanket allegations concerning alleged foreign manufacturing of components by hostile nations is similarly inapposite; the allegations do not identify specific machines or parts. (ER-67–68, ¶¶ 90–92.) Likewise, Challengers' discussion of their beliefs regarding "open source" technology has nothing to do with the claims asserted or relief requested. (ER-72–77, ¶¶ 108–24.)

Challengers also repeatedly used out-of-context quotes from testimony in unrelated cases and proceedings to sow doubt about the integrity of elections in Arizona, some of which they now regurgitate in their Opening Brief. (O.B. at 38–41.) Further, they relied below—and, attempt to rely here—on a statement from the U.S. Cybersecurity and Infrastructure Agency ("CISA"), *available at* https://www.cisa.gov/uscert/ics/advisories/icsa-22-154-01, to assert that vulnerabilities exist concerning Maricopa County's voting system, (O.B. at 39–40), even though the system addressed in the report is different than the system used by Maricopa County (or any other county in Arizona). (ER-12 (noting that Maricopa County uses Dominion Voting Systems Democracy Suite 5.5-**B** equipment—not the 5.5.A that was the subject of the CISA report); 1-Cnty-SER-24–25, ¶¶ 27-30 (declaration of Scott Jarrett concerning which election tabulation equipment is used in Maricopa County); *see also* 1-Cnty-SER-8 (explaining the CISA report and Maricopa's election tabulation equipment).)

Additionally, the entire FAC is premised on the erroneous theory that machine

14

counting of ballots is unreliable because the machines used are "potentially susceptible to malicious manipulation that can cause incorrect counting of votes" and these alleged vulnerabilities stem from the possibility that the machines "can be connected to the internet." (ER-51–52, ¶¶ 26, 33.) Maricopa County's vote tabulation system is not, never has been, and cannot be connected to the Internet. The Arizona Senate's Special Master confirmed that Maricopa County uses an air-gapped system that "provides the necessary isolation from the public Internet, and in fact is in a self-contained environment" with "no wired or wireless connections in or out of the Ballot Tabulation Center" so that "the election network and election devices cannot connect to the public Internet." (2-Cnty-SER-319, 321–22.) The Special Master's report discredits all of the Cyber Ninjas' speculative findings—relied on by the FAC—concerning alleged "unauthorized access, malware present or internet access to these systems" that "basic cyber security best practices and guidelines were not followed" or that in the past Maricopa County failed to ensure that "election management servers were not connected to the internet." (ER-58–59, ¶ 70; ER-78, ¶ 132; ER-87, ¶ 164.)

Finally, Challengers rely on two cases with facts nothing like those asserted in the instant action and whose holdings are inapposite. The first is *Curling v. Kemp*, 334 F. Supp. 3d 1303 (N.D. Ga 2018). In the court below, Challengers regularly asserted that *Curling* supported their claims and necessitated a ruling in their favor.

(*See, e.g.*, ER-47, ¶ 4; ER-64–65, ¶¶ 83–85.) They bring a similar argument here, asserting that *Curling* supports their assertions that Arizona's elections equipment is at credible risk of manipulation by evil actors and so the trial court erred by dismissing their FAC. (O.B. at 41.) This argument fails: as the district court found, *Curling* addressed a voting system that did not use paper ballots or appropriate paper back up, unlike the systems used in Arizona. (ER-14 & n.7.) Further, the district court found that the *Curling* plaintiffs alleged that "specific voting machines used in Georgia had actually been accessed or hacked multiple times, and despite being notified about the problem repeatedly, Georgia officials failed to take action." (ER-20.) Here, as addressed above, Challengers' FAC is based entirely on the fear that some event, which has never happened before and there is no rational reason to suspect will happen in the future, may nonetheless happen. Indeed, they assert—without any legal support—that the trial court should have found standing based on what they call the "reasonable inference" that, "where opportunity, means, motive, and actors exist, the actors will exploit the opportunity[,]" (O.B. at 43)—despite the fact that their allegations concerning "opportunity" and "means" were pure speculation and were easily refuted by publicly-available, trustworthy information of which the court could take judicial notice. This is insufficient as a matter of law.

Challengers' reliance on *Election Integrity Project California, Inc. v. Weber*, No. 21-56061, 2022 WL 16647768 (9th Cir. Nov. 3, 2022), (O.B. at 11–12, 24, 36,

41-42, 47), is equally specious. In that matter, plaintiffs asserted that California's enactment of legislation requiring every registered voter in California to receive a vote-by-mail ballot had not left sufficient time for the state to develop procedures to ensure only registered voters would receive such ballots in the future. *Election Integrity*, 2022 WL 16647768, at *1. Unlike here, the *Election Integrity* plaintiffs alleged specific, existing policies and procedures that "prevent[ed] meaningful standards from being applied to verify signatures on vote-by-mail ballots." *Id*. Also unlike here, those allegations were credible. *Id*. at *2 (noting that the *Election Integrity* plaintiffs "allege[d] a *credible* fear of future harm") (emphasis added); *see also id*. at *1 (explaining that the Ninth Circuit Court of Appeals has "long held that a threatened injury may constitute an injury in fact where, as here, there is 'a credible threat of harm' in the future, rather than a speculative fear 'of hypothetical future harm'") (internal citation omitted).

Contrast the *credible* allegations rooted in specificity offered by the *Election Integrity* plaintiffs with those offered here. As the district court found, their allegations could not establish Article III standing because "a long chain of hypothetical contingencies must take place for any harm to occur[,]" and Challengers had "fail[ed] to plausibly show that Arizona's voting equipment even has such security failures." (ER-20–21.)

Because Challengers' conjecture and speculation are insufficient to establish

17

standing, the district court properly dismissed their claims.

## Conclusion

For these reasons, this court should affirm the district court's dismissal of

Challengers' claims.

Respectfully submitted,

RACHEL H. MITCHELL
MARICOPA COUNTY ATTORNEY

By:     /s/*Joseph E. La Rue*

Deputy County Attorneys
MARICOPA COUNTY ATTORNEY'S OFFICE
CIVIL SERVICES DIVISION
225 W. Madison Street
Phoenix, AZ 85003
ca-civilmailbox@mcao.maricopa.gov

THE BURGESS LAW GROUP
Emily Craiger

*Attorneys for Maricopa County*
*Defendants-Appellees*

March 31, 2022

18

## Statement of Related Cases

Pursuant to Ninth Circuit Rule 28-2.6, I certify that:

[x]     I am unaware of any related cases currently pending in this court.

[ ]     I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[ ]     I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

Respectfully submitted,

RACHEL H. MITCHELL
MARICOPA COUNTY ATTORNEY

By:     /s/*Joseph J. Branco*

Joseph J. Branco
Deputy County Attorney
MARICOPA COUNTY ATTORNEY'S OFFICE
CIVIL SERVICES DIVISION
225 W. Madison Street
Phoenix, AZ 85003
ca-civilmailbox@mcao.maricopa.gov

March 31, 2023

## Certificate of Compliance

This brief contains 4,093 words excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6). I certify that this brief:

[x]   complies with the word limit of Cir. R. 32-1.

[ ]   is a cross-appeal brief and complies with the word limit of Cir. R. 28.1-1.

[ ]   is an amicus brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ]   is for a death penalty case and complies with the word limit of Cir. R. 32-4.

[ ]   complies with the longer length limit permitted by Cir. R. 32-2(b) because

    [ ]   it is a joint brief submitted by separately represented parties;

    [ ]   a party or parties are filing a single brief in response to multiple briefs; or

    [ ]   a party or parties are filing a single brief in response to a longer joint brief.

[ ]   complies with the length limit designated by court order dated _____.

[ ]   is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

Respectfully submitted,

RACHEL H. MITCHELL
MARICOPA COUNTY ATTORNEY

By:   /s/*Joseph J. Branco*

    Joseph J. Branco
    Deputy County Attorney
    MARICOPA COUNTY ATTORNEY'S OFFICE
    CIVIL SERVICES DIVISION
    225 W. Madison Street
    Phoenix, AZ 85003
    ca-civilmailbox@mcao.maricopa.gov

March 31, 2023

## Certificate of Service

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**

[ ]     I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are NOT Registered for Electronic Filing:**

[ ]     I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants (list each name and mailing/email address):

Respectfully submitted,

RACHEL H. MITCHELL
MARICOPA COUNTY ATTORNEY

By:     /s/*Joseph J. Branco*

Joseph J. Branco
Deputy County Attorney
MARICOPA COUNTY ATTORNEY'S OFFICE
CIVIL SERVICES DIVISION
225 W. Madison Street
Phoenix, AZ 85003
ca-civilmailbox@mcao.maricopa.gov

March 31, 2023