**No. 22-16413**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

---

Kari Lake, et al,

*Plaintiffs-Appellants*,

v.

Adrian Fontes, et al.,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the District of Arizona
No. 22-cv-00677-JJT
Hon. John J. Tuchi

---

**APPELLANTS' BRIEF IN REPLY TO BOTH APPELLEES' BRIEFS**

---

Andrew D. Parker
(AZ Bar No. 028314)
Parker Daniels Kibort LLC
888 Colwell Building
123 N. Third Street
Minneapolis, MN 55401
(612) 355-4100
parker@parkerdk.com

*Attorneys for Appellants
Kari Lake and Mark Finchem*

Kurt Olsen
(DC Bar No. 445279)
Olsen Law, P.C.
1250 Connecticut Ave., NW, Suite 700
Washington, DC 20036
(202) 408-7025
ko@olsenlawpc.com

*Attorneys for Appellants
Kari Lake and Mark Finchem*

# TABLE OF CONTENTS

Table of Contents ............................................................................. ii

Table of Authorities ....................................................................... iii

I. Argument ..................................................................................... 2

A. The Defendants Cannot Secure Dismissal of a Complaint Because They Contest Its Factual Allegations ................................................... 2

1. Rule 12 Does Not Permit the District Court to Sit as a Trier of Fact ............. 2

    a. Detailed Facts Are Alleged in the Amended Complaint ...................... 3

    b. The Allegations Could Not Be Rejected by Judicial Notice ................ 6

2. There are No Valid Alternate Grounds for Dismissal of the Amended Complaint. ............................................................................... 9

B. An Entire Complaint May Not Be Dismissed Based on an Attack on a Portion of It ............................................................................ 11

1. Rejection of One Form of Relief Does Not Warrant Dismissal of the Entire Complaint ................................................................................ 12

2. The Defendants' Assertions Regarding Paper Ballots Provide No Basis for Dismissal .................................................................................. 14

3. The County Defendants' Mischaracterizations of Selected Allegations Provide No Basis for Dismissal ...................................................... 15

C. The Candidates Have Standing to Bring Their Claims. ............... 16

1. Concreteness ................................................................................ 17

    a. The Secretary's Concreteness Argument Actually Claims that the Injury Is Hypothetical ................................................................ 18

    b. The Amended Complaint Alleges Facts Showing Concrete Injury .... 20

2. Particularization ........................................................................... 22

3. Actual or Imminent Harm ............................................................. 24

    a. The Amended Complaint Alleges Certain Harm ............................. 24

    b. The Amended Complaint Alleges a Substantial Risk of Harm .......... 26

    c. The Amended Complaint Need Not Show "Certainly Impending Harm." ........................................................................................ 32

D. The Eleventh Amendment Does Not Bar the Candidates' Claims .............. 33

1. The County Defendants Have No Eleventh Amendment Immunity ............. 33

2. The Secretary Has No Eleventh Amendment Immunity from the Federal Claims in the Amended Complaint ................................................. 33

E. *Purcell* Provides No Basis to Dismiss the Claims in the Amended Complaint ................................................................................. 36

II. Conclusion ................................................................................. 37

# TABLE OF AUTHORITIES

*Anderson v. Celebrezze*,
460 U.S. 780 (1983) ............................................................................. 13

*Autery v. United States*,
424 F.3d 944 (9th Cir. 2005) .............................................................. 7

*Bonas v. Town of N. Smithfield*,
265 F.3d 69 (1st Cir. 2001) ....................................................... 26, 27

*Branch v. Smith*,
538 U.S. 254 (2003) ........................................................................... 13

*Bush v. Gore*,
531 U.S. 98 (2000) ............................................................................. 13

*Cal. Dep't of Soc. Servs. v. Thompson*,
321 F.3d 835 (9th Cir. 2003) ....................................................... 14, 38

*Carson v. Simon*,
978 F.3d 1051 (8th Cir. 2020) .................................................... 23, 24

*Citizens for Better Forestry v. United States Dep't of Agric.*,
341 F.3d 961 (9th Cir. 2003) ............................................................. 19

*City of Rome v. United States*,
446 U.S. 156 (1980) ........................................................................... 13

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ........................................................................... 33

*Curling v. Kemp,*
334 F. Supp. 3d 1303 (N.D. Ga. 2018) ............................................. 32

*Curling v. Raffensperger*
493 F. Supp. 3d 1264 (N.D. Ga. 2020) ............................................. 33

*Doe v. United States Dep't of Justice*,
753 F.2d 1092 (D.C. Cir. 1985) .................................................. 14, 38

*Election Integrity Project Cal. v. Weber, No. 21-56061*,
2022 U.S. App. LEXIS 30549 (9th Cir. Nov. 3, 2022) ................. 12, 33, 34

*FEC v. Akins*,
    524 U.S. 11 (1998) ........................................................................... 23

*Griffin v. Burns*,
    570 F.2d 1065 (1st Cir. 1978) ......................................................... 26

*In re Gilead Scis. Sec. Litig.*,
    536 F.3d 1049 (9th Cir. 2008) ........................................................... 9

*Jewel v. NSA*,
    673 F.3d 902 (9th Cir. 2011) ......................................................... 5, 6

*Jones v. Bates*,
    127 F.3d 839 (9th Cir. 1997) ........................................................... 20

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018) ............................................................. 9

*Lee v. City of L.A.*,
    250 F.3d 668 (9th Cir. 2001) ............................................................. 9

*Marks v. Stinson*,
    19 F.3d 873 (3d Cir. 1994) ............................................................... 26

*Meland v. Weber*,
    2 F.4th 838 (9th Cir. 2021) ................................................... 17, 25, 26

*Nautilus Ins. Co. v. Access Med., LLC, No. 17-16265*,
    2021 U.S. App. LEXIS 23541 (9th Cir. Aug. 9, 2021) ............................ 14, 38

*Parrino v. FHP, Inc.*,
    146 F.3d 699 (9th Cir. 1998) ............................................................. 8

*Purcell v. Gonzalez*,
    549 U.S. 1 (2006) ........................................................................... 38

*Quinones v. Cty. of Orange, No. 20-56177*,
    2021 U.S. App. LEXIS 36293 (9th Cir. Dec. 9, 2021) ........................... 9

*Raines v. Byrd*,
    521 U.S. 811 (1997) ......................................................................... 19

*Renteria v. United States*,
    452 F. Supp. 2d 910 (D. Ariz. 2006) ................................................. 7

*Rogers v. Lodge*,
   458 U.S. 613 (1982) ........................................................................... 13

*Safe Air for Everyone v. Meyer*,
   373 F.3d 1035 (9th Cir. 2004) ............................................................ 7

*Shelby Advocs. for Valid Elections v. Hargett*,
   947 F.3d 981 (6th Cir. 2020) ......................................... 20, 21, 22, 23

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ............................................................ 17, 18, 19

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) ........................................................ 7, 8

*Susan B. Anthony List v. Driehaus*,
   573 U.S. 149 (2014) ........................................................................ 34

*Swann v. Charlotte-Mecklenburg Bd. of Educ.*,
   402 U.S. 1 (1971) ........................................................................... 13

*Sugarman v. Dougall*
   413 U.S. 634 (1973) ........................................................................ 13

*Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*,
   594 F.2d 730 (9th Cir. 1979) ............................................................ 7

*Trump v. Wis. Elections Comm'n*,
   983 F.3d 919 (7th Cir. 2020) .......................................................... 24

*United Transp. Union v. BNSF Ry. Co.*,
   710 F.3d 915 (9th Cir. 2013) .................................................... 11-12

*Valle Del Sol Inc. v. Whiting*,
   732 F.3d 1006 (9th Cir. 2013) ........................................................ 37

*Ventura Packers v. F/V/ Jeanine Kathleen*,
   305 F.3d 913 (9th Cir. 2002) ............................................................ 7

*Weber v. Shelley*,
   347 F.3d 1101 (9th Cir. 2003) ........................................................ 36

*Whitewater Draw Nat. Res. Conservation Dist. v. Mayorkas*,
   5 F.4th 997 (9th Cir. 2021) ............................................................. 19

**Constitutes and Statutes**

A.R.S. § 11-251 ................................................. vii, 36

A.R.S. § 16-602 ................................................. vii, 31

**Rules**

Fed. R. App. P. 44 ........................................... vii, 14, 15

Fed. R. Civ. P. 12 ................................. ii, vii, 2, 6, 7, 8, 11, 12, 17, 20, 31

## INTRODUCTION

At bottom, the Arizona Secretary of State ("Secretary") and the Maricopa County and Pima County Defendants ("County Defendants") dispute the primary factual premise of the Amended Complaint. They assert that Arizona's electronic voting machines cannot be deemed susceptible to vote manipulation. All of the Defendants' arguments supporting the District Court's dismissal of the plaintiff Candidates' claims in this action flow from that central assertion. The Defendants' opposition briefs show, by what they say and by what they do not say, that if the electronic machines *are* susceptible to vote manipulation (as alleged in the Amended Complaint), the District Court's rulings on standing and Eleventh Amendment immunity must be reversed.

The Candidates' claims, concisely expressed, allege that (1) the electronic machines used by Arizona counties to count, tabulate, and report vote tallies cannot be relied upon to yield accurate vote tallies, and (2) reliance on these machines to provide official vote tallies therefore violates the Candidates' constitutional right to have accurate, reliable tallies determine the winner of public elections. The arguments of the Secretary and the County Defendants obscure, ignore, or modify this legal theory, but they do not counter the Candidates' legal claim. Rather, the disagreement between the Candidates and the Defendants is a factual dispute. Hence the District Court erred by granting the Defendants' Rule 12

motions. A Rule 12 motion tests the legal sufficiency of a plaintiff's claims; it does not resolve conflicting factual assertions. The ***legal*** sufficiency of the Candidates' claims in this action is effectively uncontested and no ***legal*** doctrine rejects the Candidates' claims, so the Amended Complaint should not have been dismissed.

## I.     ARGUMENT

### A. <u>The Defendants Cannot Secure Dismissal of a Complaint Because They Contest Its Factual Allegations.</u>

The District Court improperly relied on factual findings that conflict with allegations in the Amended Complaint as the basis for dismissal of the Candidates' claims. OB 44-47. Both the County Defendants and the Secretary acknowledge that the District Court made factual findings. County Br. 11; Secretary Br. 36 ("prior to taking judicial notice of facts outside the record"). They are plainly wrong in contending that such fact-finding by the District Court is permissible at this stage of litigation.

### 1.  Rule 12 Does Not Permit the District Court to Sit as a Trier of Fact.

The Candidates' Opening Brief showed that the Amended Complaint alleges a multitude of facts about (a) computerized voting machines, (b) testing of the machines, (c) the history of the machines, and (d) Arizona's use of such machines, to support the overarching allegation that Arizona's voting machines cannot be relied upon to yield accurate vote tallies. *See* OB 18-19, 33, 37-41. These

allegations are both detailed and broad. They incorporate information from a wide spectrum of specific past events to plead, when these facts are taken as a whole, that Arizona's use of electronic voting machines to conduct elections cannot be relied upon to yield accurate tallies. Rather than deciding whether the Amended Complaint stated a claim for relief if these factual allegations were true, the District Court rejected the allegations and found that Arizona's electronic voting machines are secure and reliable. *See* OB 45-47.

### a. Detailed Facts Are Alleged in the Amended Complaint.

The Secretary first declares that the Amended Complaint alleges only "legal conclusions" and "conclusory assertion[s]." Secretary Br. 20. That is not consistent with reality. The Amended Complaint provides many detailed allegations to support the assertion that Arizona's electronic voting machines are not reliable:

(i) The Amended Complaint alleges that Arizona's electronic voting systems can be manipulated to alter votes and vote tallies, and deprive voters of the right to have their votes counted and reported in an accurate process. ER-50-51.

(ii) It alleges a litany of specific security failures in the electronic voting machines used by Maricopa County. ER-49.

(iii) It alleges that cybersecurity experts have identified and publicized failures in voting machines. ER-49, 51, 58-60.

(iv)    It alleges that products made by the same manufacturers who made

Arizona's electronic voting machines can be connected to computer or

cellular networks that allow unauthorized manipulation of data. ER-

52.

(v)    It alleges that the safety measures intended to secure electronic voting

machines can be defeated. ER-52.

(vi)    It alleges specific instances of voting machines producing incorrect

vote tallies in elections. ER-60, 62.

(vii)    It alleges that a programmer was hired to produce a program that

would change the results of an election on voting machines, and did

so, prior to 2004, and that since 2004 numerous other demonstrations

of election-hacking software have been made. ER-61, 62.

(viii)    It alleges that foreign countries have launched cyber-attacks against

U.S. election-related systems in the past, and that knowledgeable

experts predicted further attacks in the future. ER-63, 71, 78.

(ix)    It alleges that litigation concerning Dominion voting machines in

Georgia yielded evidence of a multitude of security failures in the

machines, and the court in that case concluded, on the evidence

presented, that the only a question was "when" an election would be

hacked. ER-64-65.

(x)     It alleges that a Dominion electronic voting system certified for use in the United States was found to contain "erroneous code" after it was used in an election in 2021. ER-74.

(xi)    It identifies the conclusions of experts and foreign countries that electronic voting machines are inherently unable to be trusted in elections. ER-47-48, 52.

These allegations far surpass the pleading requirement to defeat a motion to dismiss for lack of standing. At the pleading stage, "[g]eneral factual allegations of injury resulting from the defendant's conduct may suffice, as we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Jewel v. NSA*, 673 F.3d 902, 907, 911 (9th Cir. 2011) (quoting *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 889 (1990)).

The County Defendants also assert that the Amended Complaint does not allege sufficient facts. They argue that the Amended Complaint does not plead that *Arizona* ballot tabulation equipment has been hacked, or that *Arizona* ballots have been improperly counted. County Br. 9. No such requirement exists. The facts alleged by the Amended Complaint, taken together, provide ample basis to conclude that Arizona's electronic voting machines, like voting machines elsewhere, cannot be relied upon. The Amended Complaint alleges that Arizona's electronic voting machines have many security failures, ER-49, 51, 58-59, and that

at least one breach of an Arizona election-related computer system has occurred, ER-63, 68. It alleges facts showing that future attacks against U.S. election computer systems are likely. ER-63-65, 71, 78. There is no requirement that *Arizona* candidates wait until *Arizona*'s deficient electronic voting machines are *actually* hacked to seek prospective relief preventing such an injury to their constitutional rights.

### b. The Allegations Could Not Be Rejected by Judicial Notice.

The Secretary secondly argues that the District Court was permitted to take judicial notice of contrary facts at the pleadings stage. Secretary Br. 35-36. The Secretary does not identify, however, which facts were properly judicially noticed or the source of these contrary facts. *Id*. Nor can the Secretary reconcile this assertion with governing law that denies, to a district court engaged in a standing analysis to decide a Rule 12 motion, the authority to find facts contrary to the plaintiffs' allegations on any genuinely disputed factual issue where the jurisdictional question and the substantive claims are intertwined.[1] *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citation omitted); *Ventura Packers v. F/V/ Jeanine Kathleen*, 305 F.3d 913, 922 (9th Cir. 2002). In

---

[1] The standing issue and the substantive claims here are clearly intertwined, even identical. The Secretary does not dispute that they are intertwined.

fact, the Secretary concedes that where standing and substantive claims are "intertwined," a district court must resolve factual issues by applying the standards applicable on summary judgment. Secretary Br. 36-37.[2] The Secretary asserts that "judicial notice is still appropriate," but does not elaborate on this naked assertion or support it with authority. *Id*. at 37.

Instead, the Secretary cites *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Secretary Br. 35, 37. Judicial notice was not at issue in *Sprewell*. The language quoted by the Secretary from *Sprewell* is simply a recitation of background principles. It was "[b]ecause the attachments to Sprewell's complaint prove fatal to his claims" that the *Sprewell* claims were dismissed, 266 F.3d at 989, and "the pleading problem" in that case arose "not from the substance of his averments, but from the rest of his complaint," *id.* at 989. Thus, the

---

[2] The Candidates argued that the decision below's contrary reliance on *Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979), was erroneous. OB 48. None of the Defendants cite or defend *Thornhill*, or the other two cases relied on below, *Renteria v. United States*, 452 F. Supp. 2d 910 (D. Ariz. 2006), and *Autery v. United States*, 424 F.3d 944, 956 (9th Cir. 2005). On this point, the County Defendants accuse the Candidates of making an "objectively incorrect" claim that the District Court *sua sponte* "applied Fed. R. Civ. P. 12(b)(1)," County Br. at 10 n.5, but the Candidates did not make such a claim. The Candidates stated accurately that the District Court *sua sponte* adopted an analysis permitting the resolution of factual disputes on a Rule 12(b)(1) motion. This approach was *sua sponte* because both sets of Defendants in their briefing below accepted the familiar Rule 12(b)(6) approach to the facts alleged in the Amended Complaint. OB 49.

Secretary's primary authority for the remarkable proposition that Rule 12

permitted the District Court to use judicial notice to reject the central factual

allegation in the Amended Complaint (that Arizona's voting machines are not

secure against vote manipulation) is a case that did not concern judicial notice or

inadequate factual averments at all.[3]

The law governing judicial notice of facts at the pleadings stage is stated not

in *Sprewell* but rather in *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999

(9th Cir. 2018). *Khoja* explains that judicial notice is only permissible if the

adjudicative fact at issue is "not subject to reasonable dispute." *Id*. (quoting Fed. R.

Evid. 201(b)). Further, *Khoja* states, "a court cannot take judicial notice of

disputed facts contained in such public records." *Id. See also Lee v. City of L.A.*,

250 F.3d 668, 689-90 (9th Cir. 2001); *Quinones v. Cty. of Orange*, No. 20-56177,

---

[3] The Secretary also cites *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-706 (9th Cir. 1998). Secretary Br. 35. In *Parrino*, a patient sued his HMO plan provider for wrongfully denying treatment coverage. The district court considered the HMO's Master Group Application document, a document upon which the patient's claims were based, because plan membership, coverage, and administration were "essential" to the patient's complaint. *Id.* at 706. *Parrino* holds that a district considering a motion to dismiss may consider a document "the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies," and that a document upon which a contract depends can be considered in contract case. *Id*. at 706. The Candidates' claims are not contractual in nature, no document comparable to the Master Group Application is part of this action, and the documents relied upon by the District Court are certainly not documents upon which the Amended Complaint necessarily relies.

2021 U.S. App. LEXIS 36293, at *4 (9th Cir. Dec. 9, 2021). "[A] district court ruling on a motion to dismiss is not sitting as a trier of fact." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1057 (9th Cir. 2008). The Secretary does not attempt to distinguish or otherwise address *Khoja*, although the Secretary cites *Khoja* with respect to a different issue elsewhere. Secretary Br. 5.

The Candidates alleged that Arizona's electronic election machines can be manipulated to change votes, and therefore use of these unreliable machines to tally votes violates the constitutional right to vote. Neither the Defendants nor the District Court disputed the Candidates' legal theory. Rather, they attacked the Candidates' factual premises. The facts here are hotly disputed. The District Court held that Arizona's electronic election machines and election system are so secure that the Candidates' contrary factual allegations were "speculative" and "hypothetical." ER-22. In so holding, the District Court improperly appointed itself to be the trier of fact at the pleadings stage.

## 2. There Are No Valid Alternate Grounds for Dismissal of the Amended Complaint.

The Secretary tells this Court four separate times that the decision below may be affirmed "on any ground" supported by the record. *See* Secretary Br. 5, 6, 16, 36. This repetition implicitly acknowledges that the reasoning of the District Court is unsustainable.

The Secretary asks this Court to affirm dismissal on the theory that "*Before* the district court took judicial notice of certain facts, it held that the FAC failed *on its face* to show an injury in fact." Secretary Br. 36 (emphasis in original). As demonstrated above, the Amended Complaint does not fail "on its face" to show an injury in fact. Moreover, this argument conflicts with the essence of the District Court's order and with the rest of the Secretary's brief. They emphasize factual assertions that dispute what is alleged in the Amended Complaint and assert that Arizona's electronic election machines are secure against vote manipulation. *See* Secretary Br. 6-11. The Candidates' Opening Brief showed that the foundation of the District Court's ruling dismissing the Amended Complaint was rejection of the factual allegations in the Amended Complaint. OB 45-47. The Secretary does not provide any reason to conclude otherwise. Secretary Br. 36. The Defendants' arguments, like the District Court's opinion, center principally on the factual assertion that Arizona's use of electronic voting machines may not be challenged in court as insecure because the machines are officially secure. That is a factual defense and not a reason for dismissal under Rule 12 of the Federal Rules of Civil Procedure. Simply placing a government certification on something does not and cannot insulate it against challenge.

The Secretary asserts that the Candidates were obligated to separately challenge the District Court's judicial notice ruling and therefore purportedly

"waive[]" their challenge to the District Court's dismissal decision. Secretary Br. 37-38. The Candidates have, however, appealed the dismissal Order. Since that Order is erroneous, the Candidates are entitled to reversal of the dismissal Order regardless of the judicial notice ruling. The District Court could not rest its dismissal Order on factual determinations contrary to the allegations in the Amended Complaint, regardless of the source of those factual determinations.

If the Candidates prove the factual allegations stated in their Amended Complaint, they are entitled to relief. The District Court's improper factual findings denied the Candidates the opportunity to prove their factual claims. This error of law requires reversal. *United Transp. Union v. BNSF Ry. Co.*, 710 F.3d 915, 934 (9th Cir. 2013) (defendant's contradiction of facts alleged in complaint cannot serve as basis for dismissal); *Election Integrity Project Cal. v. Weber*, No. 21-56061, 2022 U.S. App. LEXIS 30549, at *5-6 (9th Cir. Nov. 3, 2022).

**B. An Entire Complaint May Not Be Dismissed Based on an Attack on a Portion of It.**

The Defendants claim that the entire Amended Complaint was properly dismissed because there purportedly were flaws in isolated allegations.[4] That is not

---

[4] There in fact were no flaws in any of the allegations, and the Defendants' assertions otherwise are entirely disputed.

the law. Rule 12(b)(6) plainly provides that a complaint may not be dismissed unless defendants show that plaintiffs are not entitled to ***any*** relief. If the plaintiffs may be entitled to ***some*** relief, a Rule 12(b)(6) motion must be denied.

### 1. Rejection of One Form of Relief Does Not Warrant Dismissal of the Entire Complaint.

The Secretary asserts that one relief requested by the Amended Complaint – specified methods of election administration – cannot be granted. Secretary Br. 44-46. The Secretary is incorrect. Federal courts have legal authority to enforce detailed remedies for local government violations of federal rights. Federal courts have vindicated federal and constitutional rights by issuing many orders concerning the details of state elections.[5] The case relied upon by the Secretary, *Sugarman v. Dougall*, 413 U.S. 634 (1973), did not concern state election regulations. It acknowledged that "state action, particularly with respect to voter qualifications, is not wholly immune from scrutiny under the Equal Protection Clause." *Id*. at 648. In a later case holding that a state election regulation violated

---

[5] *E.g. Branch v. Smith*, 538 U.S. 254 (2003) (redrawing of congressional district lines); *Bush v. Gore*, 531 U.S. 98 (2000) (enjoining state manual recount procedures in election as inconsistent with federal constitutional rights); *Rogers v. Lodge*, 458 U.S. 613 (1982) (ordering county be divided into five voting districts); *City of Rome v. United States*, 446 U.S. 156 (1980) (prohibiting changes to structure of city official districts, term sequencing, and majority vote requirement). *Cf. Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 18, 31-32 (1971) (detailed remedial scheme governing operation of local schools).

federal constitutional rights, the Supreme Court explained that "even when pursuing a legitimate interest, a State may not choose means that unnecessarily restrict constitutionally protected liberty." *Anderson v. Celebrezze*, 460 U.S. 780, 806 (1983). A state's power to determine the method by which elections are conducted does not overcome individual rights granted under the Constitution. Accordingly, the Defendants' argument that their methods of conducting elections are beyond constitutional scrutiny in a federal court is simply incorrect.

Moreover, even if a federal court were precluded from ordering the precise remedy described in the Amended Complaint, the unavailability of that ***form of relief*** would not justify dismissal of the entire complaint. The Candidates also requested relief that Defendants do not challenge as improper, including a simple order finding Arizona's use of electronic voting systems to be unconstitutional and an injunction prohibiting it. ER-94. The District Court has discretion to fashion injunctive relief and should grant appropriate relief "even if the party has not demanded such relief in the party's pleadings." *Cal. Dep't of Soc. Servs. v. Thompson*, 321 F.3d 835, 857 (9th Cir. 2003) (quoting Fed. R. Civ. P. 54(c)); *Nautilus Ins. Co. v. Access Med., LLC*, No. 17-16265, 2021 U.S. App. LEXIS 23541, at *3 (9th Cir. Aug. 9, 2021). "[I]t need not appear that the plaintiff can obtain the *specific* relief demanded as long as the court can ascertain from the face of the complaint that *some* relief can be granted." *Doe v. United States Dep't of*

*Justice*, 753 F.2d 1092, 1104 (D.C. Cir. 1985) (emphasis in original).

The Secretary cites Fed. R. App. P. 44. Secretary Br. 45. That rule applies when a party questions the constitutionality of a "statute of a State in a proceeding in which that State or its agency, officer, or employee is **not a party in an official capacity**." Fed. R. App. P. 44(b) (emphasis added). Rule 44 is not applicable here because a party, the Secretary, is an officer of Arizona in his official capacity.

### 2. The Defendants' Assertions Regarding Paper Ballots Provide No Basis for Dismissal.

The Secretary and the County Defendants both emphasize that Arizona voters use paper ballots to cast votes, attempting to bootstrap this fact into an argument that Arizona does not actually use electronic voting machines. Secretary Br. 6-7, County Br. 11. The use of paper ballots to record votes is a red herring because Arizona uses computerized equipment to *count* the votes. *See* Secretary Br. 7 (citing Arizona law definitions of "electronic voting system" and "Vote tabulating equipment"). The use of computerized equipment to count and tabulate votes is the basis of the Candidates' constitutional challenge to the system. That challenge is not affected by the fact that paper ballots are fed into the computerized machines. With trivial exception, Arizona's paper ballots are only counted by the machines, and not ever reviewed by a human being. See page 35 below.

### 3. The County Defendants' Mischaracterizations of Selected Allegations Provide No Basis for Dismissal.

The County Defendants mischaracterize the Amended Complaint and argue that the entire Amended Complaint should be dismissed because, they assert, selected allegations are flawed. County Br. 11-15. For example, the County Defendants falsely claim that the Amended Complaint denies that Arizona uses paper ballots. *Id*. 11. To the contrary, the Amended Complaint indicates and in fact depends on Arizona's use of paper ballots. It attacks the use of optical scanners whose function is to count paper ballots. ER-50 ("Every county in Arizona intends to tabulate votes cast in the Midterm Elections through optical scanners").

The County Defendants also mischaracterize the Candidates' attack on the testing and auditing process for Arizona's election machines. County Br. 11-12. In the paragraphs cited by the County, the Candidates deny that Arizona's processes are "neutral," "expert," and "objective."[6] The County Defendants remarkably assert, "Arizona does not use computerized voting, and never has." County Br. 13.

---

[6] If the Defendants' argument is that the Candidates cannot *plausibly* deny these allegations, it bears noting that at the District Court's hearing on the motion for a preliminary injunction, the Candidates presented expert testimony to support these allegations. Tr. of July 21, 2022 Mot. Hearing (doc. 98) at 115:7-19, 116:2-118:5, 126:3-127:3; 32:8-14; 62:11-63:21; 161:15-22. *See also* Logan Decl. (doc. 39) ¶¶ 69, 78, 80, 87(d).

Yet, as the Secretary's brief shows, Arizona law expressly defines the "electronic voting system" and "Vote tabulating equipment" that Arizona uses. Secretary Br. 7. *These are computerized voting devices*. Again and again, the County Defendants impose their own unjustified interpretations upon language in the Amended Complaint and then accuse the Candidates of failing to meet the mark merely because the Candidates do not accept the County Defendants' unjustified interpretations. *See* County Br. 11-15. At most, the County Defendants identify disputed issues of fact on these matters, and such disputed issues of fact cannot be the basis to grant a Rule 12 dismissal motion.

The Candidates are entitled under the Federal Rules to allege facts that they intend to support with evidence, and to have an opportunity to prove their allegations at trial. The County Defendants apparently believe that they were entitled to have the Amended Complaint dismissed at the pleadings stage because they countered its factual assertions with their own.

## C. <u>The Candidates Have Standing to Bring Their Claims.</u>

The only element of the Candidates' standing that was contested before the District Court is injury in fact. To establish injury in fact, a plaintiff must allege the "invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Meland v. Weber*, 2 F.4th 838, 844 (9th Cir. 2021) (citation omitted). Injury in fact comprises three separate and

independent requirements: concreteness, particularity, and actuality. Each tests a different aspect of standing. The Defendants' arguments conflate the three, thereby obfuscating the considerations pertinent to each. This is erroneous. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 342 (2016) (standing analysis was "incomplete" when it "failed to fully appreciate the distinction between concreteness and particularization").

Under the applicable, distinct legal standards, the Amended Complaint meets all three requirements to allege injury in fact.

### 1. Concreteness

As shown in the Candidates' Opening Brief the Amended Complaint pleads a concrete injury – infringement of a constitutional right. That is a concrete, intangible injury. OB 27-28; *Spokeo*, 578 U.S. at 340.

The brief of the County Defendants does not address the concreteness element.

The Secretary argues that the injuries alleged in the Amended Complaint are "too speculative to be concrete." Secretary Br. 19. This is an unsound argument because (1) it does not address concreteness, but instead concerns the "actual or imminent harm" requirement for injury in fact; and (2) it ignores the relevant allegations in the Amended Complaint.

### a. The Secretary's Concreteness Argument Actually Claims that the Injury Is Hypothetical.

The Secretary fails to address, much less rebut, the Candidates' simple argument on concreteness. Alleged violation of a constitutional right satisfies the concreteness element. *See* OB 27, 30.[7] The Secretary does not deny (a) that the Candidates possess a constitutional right to vote, (b) that an intangible injury can be "concrete," or (c) that infringement of a constitutional right is a concrete intangible injury. Secretary Br. 19-25. By conceding these points, the Secretary implicitly concedes that the Amended Complaint alleges concrete injury.

The Secretary's brief repeatedly describes the allegations in the Amended Complaint as "hypothetical" and "speculative." Secretary Br. 20-22. This is a challenge based on the requirement that a plaintiff allege "actual or imminent harm," not the "concrete and particularized injury" element of standing. If alleged harm is loss of an identifiable constitutional right, it is adequately "concrete." *Spokeo*, 578 U.S. at 340. Uncertainty that harm will occur does not affect the concreteness of the alleged injury. These are separate inquiries. *See Whitewater Draw Nat. Res.*

---

[7] The Secretary cites *Raines v. Byrd*, 521 U.S. 811 (1997). Secretary Br. 19. *Raines* held that members of Congress lacked standing to challenge the Line Item Veto Act because a loss of political power caused by the legislation was not a concrete injury. The Candidates do not allege an unquantifiable loss of political power. *Raines* specifically says that "loss of any private right" would "make the injury more concrete." *Id*. at 821.

*Conservation Dist. v. Mayorkas*, 5 F.4th 997, 1013 (9th Cir. 2021); *Citizens for Better Forestry v. United States Dep't of Agric.*, 341 F.3d 961, 972 (9th Cir. 2003).

Footnote 11 of the Secretary's brief essentially concedes this point. Secretary Br. 28, n.11. The Candidates' brief hypothesized that votes tallied on a chalkboard would violate the constitutional right to vote because it would be an inherently insecure election system. OB 32. The Secretary's brief does not deny that such a scenario would violate constitutional rights. The Secretary only denies that Arizona's system is so insecure. Secretary Br. 28 n.11. This proves that the dispute between the Candidates and the Defendants is a *factual* dispute: *How* insecure is Arizona's election system? Such a factual dispute is not resolvable on a Rule 12 motion. If the Candidates' insecurity allegation is correct, the Amended Complaint states a claim of concrete constitutional injury.

The case the Secretary relies on concerning concreteness is *Shelby Advocs. for Valid Elections v. Hargett*, 947 F.3d 981 (6th Cir. 2020). Secretary Br. 23-24.[8] The decision in *Shelby* turned on the Sixth Circuit's view of the likelihood of future harm ("imminence") based on the facts alleged in that case. It was not a determination that the plaintiffs' injury was insufficiently concrete. 947 F.3d at

---

[8] The Secretary also, oddly, cites *Jones v. Bates*, 127 F.3d 839, 847 n.8 (9th Cir. 1997). Secretary Br. at 24. The *Jones* plaintiffs were held to have standing. *Id.*

981. Moreover, none of the plaintiffs in that case was a candidate for office. *Id.* at 980-81.

### b. The Amended Complaint Alleges Facts Showing Concrete Injury.

The Secretary's brief also contends that the Amended Complaint alleges only legal conclusions, not facts, and that this amounts to failure to allege concrete injury. Secretary Br. 20. The brief addresses the wrong page of the Candidates' Opening Brief. *See id.* (citing OB 24, 26). In a different, later section of the Opening Brief, titled "The Amended Complaint Alleges a Legally Protected Interest That Is Concrete and Particularized," the Candidates discuss the factual allegations that show that their injury is concrete. OB 27-28.

The Amended Complaint alleges specific facts that, if true, would prove that the Candidates' constitutional right to vote is infringed by use of electronic voting machines to produce official vote tallies.

(i) The Amended Complaint provides a lengthy list of specific cybersecurity vulnerabilities in the Maricopa County election system. ER-49.

(ii) "All electronic voting machines and election management systems, including those slated to be used in Arizona in the Midterm Election, can be manipulated through internal or external intrusion to alter votes and vote tallies." ER-51.

(iii)    "Specific vulnerabilities in the electronic voting machines used by Maricopa County have been explicitly identified and publicized in analyses by cybersecurity experts, even absent access to the systems." *Id.*

(iv)    "Electronic voting machines and software manufactured by industry leaders, specifically including Dominion and ES&S, are vulnerable to cyberattacks before, during, and after an election in a manner that could alter election outcomes," and the systems "can be connected to the internet or cellular networks, which provides an access point for unauthorized manipulation of their software and data." ER-52.

(v)    In 2018 a Congressional Task Force found that Russian agents had "targeted election systems in at least 21 states, stealing personal voter records and positioning themselves to carry out further attacks," and had "accessed at least one U.S. voting software supplier," and the FBI director testified, "[T]hey'll be back." ER-68.

(vi)    In April 2021 the Biden administration "announced sanctions against Russia for election interference and hacking in the 2020 United States presidential election." ER-78.

(vii)    Auditors reviewing Maricopa County's election process issued a report stating that "Files were missing from the Election Management

System (EMS) Server" and "basic cyber security best practices and guidelines from the CISA were not followed." *Id.*

The Amended Complaint alleges facts that establish the Candidates' claim, not mere legal conclusions. The Secretary ignores or tries to wave away these factual allegations (Secretary Br. 20-21), but he cannot overcome the words in the Amended Complaint.

### 2. Particularization

The Amended Complaint pleads a "particularized" injury because "[a]n inaccurate vote tally is a concrete and particularized injury to candidates" sufficient to meet the injury-in-fact requirement. *Carson v. Simon*, 978 F.3d 1051, 1058 (8th Cir. 2020). The "particularization" element of an injury-in-fact is satisfied "where large numbers of voters suffer interference with voting rights conferred by law." *FEC v. Akins*, 524 U.S. 11, 24 (1998). The Candidates' brief cites many cases establishing that a plaintiff has standing to pursue election-related claims that affect him or her, even if others are similarly injured. OB 28-29.

The Secretary acknowledges that a widely shared injury can satisfy the particularization requirement, but his brief asserts that the Candidates' alleged injury does not actually "affect" the Candidates. Secretary Br. 25-26. This is patently untenable. A candidate for elective office obviously tries to obtain more votes than his or her opponents. An inaccurate or manipulated vote tally "affects" a candidate

by interfering with the candidate's *raison d'etre*. In *Carson*, the Eighth Circuit held that candidates for office have a "cognizable interest in ensuring that the final vote tally accurately reflects the legally valid votes cast." 978 F.3d at 1058. *Carson* held that a candidate had standing to challenge a state's announced intent to count absentee ballots received after election day. Such proposed conduct affected the plaintiff-candidate because it influenced the vote tally. Similarly, the Seventh Circuit held that a candidate had standing to challenge the method by which a state appointed its electors for a presidential election, notwithstanding that the candidate did not reside in that state, because this alleged unlawful activity "affect[s] [him] in a personal and individual way." *Trump v. Wis. Elections Comm'n*, 983 F.3d 919, 924-25 (7th Cir. 2020). The Secretary's brief attempts to distinguish *Carson* and *Trump*, but his arguments miss the relevant point because they concern whether an injury is "hypothetical," not whether it is particular. Secretary Br. 22, 24, n.10. Nor does he cite any legal authority to support his assertions. *See id.* at 25-26.

The Secretary's brief also contends that the Candidates did not show that the "election playing field was tilted against them." Secretary Br. 26. Alleging a "tilt of the playing field" is not required to establish standing, as shown by *Carson* and *Trump.* OB 29-30 ("No such requirement to allege 'tilting' exists."). The District Court was simply wrong in requiring a candidate to allege tilting in order to establish standing.

23

### 3.  Actual or Imminent Harm

The Secretary's primary argument concerning injury-in-fact is his claim that the Candidates' alleged injury is "too conjectural and hypothetical." *See* Secretary Br. 27. This relates to the requirement that a plaintiff's injury be "actual" or "imminent" rather than conjectural or hypothetical. *See Meland*, 2 F.4th at 844.

The Candidates' brief demonstrates that the Amended Complaint satisfies both alternative elements of "actual or imminent harm" – (a) certain harm and (b) substantial risk of harm. OB 31-44. The briefs of the Secretary and the County Defendants (a) ignore the affirmative allegations identified by the Candidates, (b) divert the Court's attention to other portions of the Amended Complaint, and (c) rely on factual assertions that contradict the allegations in the Amended Complaint.

### a.  The Amended Complaint Alleges Certain Harm.

The Candidates allege that reliance on unreliable electronic voting machines to determine the outcome of an election inflicts certain harm on them because the vote tallies reported by the machines cannot reasonably be known to be correct. OB 31-35. Arizona's total reliance on these machines guarantees that the official vote tally will be uncertain, because no one will ever know whether the data or software on the machines was altered to change the vote tally. The constitutional right to vote is violated by use of an inherently uncertain method to determine the winner of an election. *Id*. at 30, 35; *Griffin v. Burns*, 570 F.2d 1065, 1078-79 (1st

Cir. 1978) (affirming injunction requiring new election where the "integrity" of the initial election "was severely impugned"); *Marks v. Stinson*, 19 F.3d 873, 887 (3d Cir. 1994) (affirming injunction against candidate taking office after election in which fraud may have changed the outcome when the "possibility is left open that some other candidate actually received more votes than the declared winner, which would mean that each of the votes cast for this other candidate was ignored"); *Bonas v. Town of N. Smithfield*, 265 F.3d 69, 74 (1st Cir. 2001) (where "organic failures in a state or local election process threaten to work patent and fundamental unfairness, a colorable claim lies for a violation of substantive due process (and, hence, federal jurisdiction attaches)").

The briefs of the Secretary and the County Defendants do not contradict, or even respond to, the Candidates' "certain harm" argument. Secretary Br. 27-30; County Br. 8-18. The Defendants choose instead to opine about whether hacking of election machines is a hypothetical risk. *See id.* Their statements are factual assertions that address only whether there is a *substantial likelihood* of an actual hack.[9] (This consideration is addressed below. See pages 31-37.) The Defendants

---

[9] The Secretary points to testing and auditing procedures as evidence that harm is not certain. Secretary Br. at 28-29. The Amended Complaint, however, alleges that

never explain how a state's choice to rely on an unreliable method to tally votes can be consistent with a candidate's constitutional right to have an outcome of an election determined by the correct vote tally.

If States tally votes in a manner that can be surreptitiously manipulated, official election results are inherently uncertain. No one can ever know whether the results were manipulated or not. That outcome violates the constitutional right to vote. It also casts an unnecessary cloud over elections.

### b. The Amended Complaint Alleges a Substantial Risk of Harm.

The "substantial risk of harm" issue is the primary – virtually exclusive – focus of the Defendants' briefs. It is the question the Defendants invoke as a hammer in response to every aspect of this appeal.

The Amended Complaint pleads facts showing (a) that Arizona's electronic voting machines provide an opportunity for manipulation of vote tallies, (b) that attempts to breach the security of U.S. electronic election systems have occurred in

---

these procedures are vulnerable to intrusion and lack adequate security of the machines. ER-47, 51-52, 61, 66, 74, 81-82 (processes billed as guarding against security breaches, such as certification inspections, testing, and risk limiting audits, are inadequate and can be defeated); *e.g.* Secretary's Addendum at A-96 (only 2% of precincts are audited by hand count). Since testing and auditing procedures can be defeated, the harm of the Defendants relying on unreliable vote tallies is certain.

the past, and (c) that persons with the desire and means to manipulate American elections exist. These facts taken together – opportunity, prior similar attempts, and motivated actors with means – plead a substantial risk of harm. A plaintiff need not plead that a specific bank has been robbed in the past to plead a substantial risk that the bank will be robbed in the future if the bank lacks security measures and there are individuals who are motivated to rob and have the means to do so.

The Defendants contend that the Amended Complaint (i) lacks sufficient detail, (ii) includes allegations not related to Arizona, and (iii) depends upon a "speculative chain" of hypothetical events that may never occur. None of these contentions has substance.

**Detailed Allegations**. The assertion in the Secretary's brief that the Amended Complaint only provides "legal conclusions," not factual allegations (Secretary Br. 20-21) is simply untrue. This assertion ignores many portions of the Amended Complaint that plead factual detail. *E.g.* ER-72-73, 80-81, 87; OB 37-41.

**Events Outside Arizona**. The Secretary next faults the Amended Complaint for including factual allegations about events outside of Arizona. Secretary Br. 28, 30-31. As noted above, the Amended Complaint includes allegations about Arizona's election systems and a past hack of an election-related system in Arizona. ER-58-59, 63, 68, 78. Allegations about events outside Arizona are relevant and important because it is reasonable to infer that activity in other

jurisdictions will also affect Arizona in the future, particularly in light of the facts alleged concerning Arizona's vulnerability to such activity. To show a "substantial risk" of harm, a plaintiff need not allege that precisely the same harm has been inflicted in the past in the specific location of the lawsuit. The plaintiff need only allege facts showing that there is a "substantial risk" of the specified harm occurring *in the future* in that location.

***Speculative Chain.*** The Defendants' primary thrust is to repeat the District Court's holding that the Amended Complaint presents only an impermissibly hypothetical "speculative chain" of unlikely events that would have to occur before the Defendants would be harmed. Secretary Br. 27-28 ("lengthy chain of conjectural and hypothetical contingencies" required before any harm could occur). The Amended Complaint alleges facts that substantiate every link except one in the causal chain: it does not identify a specific named person who will hack the results of the future election. Unless standing is limited to prophets, specifying a person who will inflict the injury and the date, time, and place of a future hack cannot be required to plead a "substantial risk" of harm.

The first link challenged by the Defendants' "speculative chain" is the requirement that the voting machines used in Arizona must have security failures allowing a malicious actor to manipulate vote totals. Secretary Br. 28. The Amended Complaint alleges facts to show precisely such security failures at

length. ER-49 (specific security failures in the machines used by Maricopa County); ER-51 (all electronic voting machines and election management systems, including those used in Arizona, are vulnerable to internal or external intrusion to alter votes); ER-56-57 (computer scientists demonstrated the hacking of electronic voting machines manufactured by Dominion and ES&S); ER-50, 56 (Dominion and ES&S voting machines are used by the County Defendants); ER-61 (malware can cause the changing of votes on electronic election equipment and delete itself after the election, leaving no evidence of vote changes); ER-74 (Dominion tabulators that had been certified by the federal government were found in an election to contain "erroneous code" that excluded ballots from reported election results); ER-80-81 (Dominion voting machines that had been certified by the federal government had nine security failures can be used to steal votes). The Defendants try to evade these factual allegations by presenting their own contrary facts. Secretary Br. 8-11, 28 n.11. A defendant may not prevail on a Rule 12 motion by contradicting the facts alleged in the complaint.

The third link in the Defendants' "chain" is that "Arizona's specific procedural safeguards must fail to detect the manipulation." Secretary Br. 28. Arizona's audit safeguard – a human count of ballots from only 2% of precincts plus only 5,000 total early ballots, A.R.S. § 16-602(B)(1), (B)(2), (F); *see* Secretary Addendum at A-96 – will likely fail to detect manipulation of vote

tallies. The Secretary informed the District Court that in 2020 over 1.9 million early ballots were cast in Maricopa County. *See* Doc. 29-11. Hand-counting 5,000 of these early ballots left ***99.74%*** of the 1.9 million ballots unchecked. Arizona's audit safeguard is not a reliable defense against manipulation. Nor is the machines testing and certification safeguard, because the Amended Complaint alleges that these measures can be defeated and that certified voting machines have been found to report incorrect vote tallies in actual elections.

The second and fourth "links" in the Defendants' "chain" are substantively the same point: they demand that an actor must modify vote tallies to change the outcome of an election. Secretary Br. 28. The Amended Complaint does not predict who will hack future elections. But the Candidates need not make such a prediction to plead a "substantial risk" of harm. A plaintiff who alleges facts showing that the harm *can* occur, that there are *persons seeking to bring about* the harm, and that the persons seeking to bring it about are *capable of* doing so, has alleged a substantial risk of the harm. The Amended Complaint alleges far more: that knowledgeable persons, including (a) cyber-experts, (b) senior administration officials, including the former director of the FBI, (c) members of Congress, and (d) a federal judge have all warned (a) that the harm is likely to occur in the future, ER-63, 65, 68-71; (b) that similar harms have already occurred in other places, ER-

78, and (c) that experts have demonstrated the ability to cause the harm, ER-61-62, 66-67.

*Distinguishing Authorities.* The Secretary's brief attempts to distinguish certain authorities cited by the Candidates concerning this issue. Secretary Br. 31-33. The Secretary's arguments do not address the points for which these authorities were cited.

*Curling v. Kemp* stated that standing exists where a plaintiff "plausibly allege[d] a threat of a future hacking event that would jeopardize their votes and the voting system at large." 334 F. Supp. 3d 1303, 1316 (N.D. Ga. 2018). Even assuming *Curling* has somewhat different facts from this case, that legal principle remains good law. Under it the Candidates here plausibly alleged a threat of a future hacking event that would jeopardize their votes and vote tallies. The *Election Integrity Proj. Cal.* decision also found standing where a "credible threat" existed. 2022 U.S. App. LEXIS 30549, at *5-6. The *Seeking the Source* law review article supports the plausibility of the Candidates' allegations concerning electronic voting machine security failures. Also relevant to the plausibility of the Candidates' claims is the *Curling v. Raffensperger* court's warning that the evidence it saw showed that the question of hacked elections is not "might this actually ever happen?" but rather "when it will happen." 493 F. Supp. 3d 1264, 1342 (N.D. Ga. 2020).

### c. The Amended Complaint Need Not Show "Certainly Impending Harm."

The Secretary's final argument concerning the purportedly "conjectural" and "hypothetical" nature of the harm alleged in the Amended Complaint is an assertion that the Candidates failed to show "certainly impending" harm. Secretary Br. 34. The Secretary cites the District Court's reliance on *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). *Id*.

The Candidates' opening brief demonstrated how the District Court misstated the law when it relied on *Clapper* to require a plaintiff to show "certainly impending" harm. OB 42 (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). The brief of neither Defendant disputes this argument nor argues that *Susan B. Anthony List* does not apply here. Both Defendants perfunctorily cite "certainly impending harm" language without explaining how their interpretation of *Clapper* can be reconciled with the later Supreme Court decision in *Susan B. Anthony List*. Secretary Br. 34; County Br. 8. *See also Election Integrity Project Cal., Inc.*, No. 21-56061, 2022 U.S. App. LEXIS 30549, at *5 ("credible threat" of future harm satisfies standing requirement at pleadings stage).[10]

---

[10] Elsewhere the Secretary and the County Defendants acknowledge that *Election Integrity Project* held a credible threat of harm to meet the requirement for standing. Secretary Br. 32; County Br. 17.

### D. **The Eleventh Amendment Does Not Bar the Candidates' Claims.**

#### 1. **The County Defendants Have No Eleventh Amendment Immunity.**

The Candidates contend that any Eleventh Amendment immunity does not protect the County Defendants. OB 16. The County Defendants do not dispute this. *See* County Br. 1.

#### 2. **The Secretary Has No Eleventh Amendment Immunity from the Federal Claims in the Amended Complaint.**

Eleventh Amendment immunity does not bar an injunction action to vindicate federal rights against a state official acting in his or her official capacity. OB 17-20. The Secretary's brief does not dispute this legal principle, and it does not deny that the Candidates possess federal voting rights. Secretary Br. 38-43.

The Secretary argues that he is protected by the Eleventh Amendment because, he contends, the Candidates' claims rest on alleged violations of state law. Secretary Br. 15, 38-43. The Candidates' claims do not, however, rest on alleged violations of state law. The Candidates' claims rest on alleged violations of their federal constitutional rights, specifically the right to vote. ER-88-90. Even assuming that the Defendants' use of electronic voting machines is entirely consistent with Arizona law, the Amended Complaint asserts that such use nevertheless violates federal constitutional rights.

The Secretary argues that various allegations in the Amended Complaint show that the Candidates' claims secretly rely on alleged violations of Arizona

state law. Secretary Br. 41-42. To be sure, the Amended Complaint *initially* asserted claims under state law. But the Candidates withdrew these claims after meeting and conferring with the Defendants. That agreement was memorialized in the parties' briefing to the District Court. Maricopa County Defs.' Mot. to Dismiss (doc. 27) at 19 ("Plaintiffs stated they would not pursue what they have called their A.R.S. § 11-251 claim"). Consequently, the Defendants' challenges to allegations in the Amended Complaint about Arizona state law fail to account for the Candidates' withdrawal of their state law allegations. The Candidates did not provide the Court with any Arizona state law provisions in their Addendum (*see* Secretary Br. 42, n.16) precisely because none of these provisions are pertinent. *The Candidates are not asking any court to grant relief for the violation of any Arizona state law, or to order any person to comply with any provision of Arizona state law.*

Moreover, even if the Candidates had not withdrawn their state law claims, the Eleventh Amendment would only shield the Secretary against such state law claims. Any Eleventh Amendment immunity against state law claims possessed by the Secretary does not extend to the Candidates' separate federal law claims.

The Secretary's brief cites *Weber v. Shelley*, 347 F.3d 1101, 1107 (9th Cir. 2003), for the proposition that "the Constitution does not forbid the use of touchscreen voting systems without paper ballots." Secretary Br. 43. In *Weber*, the

Court affirmed a grant of summary judgment against a claim concerning the use of touchscreen voting systems. *Weber* shows that a plaintiff challenging the use of electronic voting systems should be afforded the opportunity to discover and provide to the district court facts supporting the plaintiff's claims. *Weber* does not hold that any device characterized by the defendant as an electronic voting system is automatically immune from the ordinary principles of civil litigation. The factual evidence available concerning the use of electronic voting systems is far more developed today than it was in 2003, as the allegations in the Amended Complaint show. *See* ER-53, 59-72.

The Secretary's brief approves the District Court's statement that "there is no constitutional basis for federal courts to oversee the administrative details of local elections." Secretary Br. 44. But as noted above, federal courts have long overseen the details of local elections to ensure that state or local officials do not deny voters their constitutional rights. *See supra* page 16. The *Sugarman* case cited by the Secretary was not an election law case and does not conflict with the Candidates' position in this Court.

The Secretary asserts that "The Secretary's compliance with Arizona law guarantees compliance with federal law." Secretary Br. 42-43. The United States Constitution is federal law. Arizona law can run afoul of the federal Constitution. *E.g. Valle Del Sol Inc. v. Whiting*, 732 F.3d 1006, 1012 (9th Cir. 2013) (affirming

injunction against enforcement of unconstitutional Arizona statute). It follows that the Secretary's compliance with Arizona law does *not* guarantee compliance with federal law.

### E. *Purcell* Provides No Basis to Dismiss the Claims in the Amended Complaint.

The Candidates' Opening Brief stated that *Purcell v. Gonzalez*, 549 U.S. 1 (2006) "does not provide a basis to dismiss the Amended Complaint because *Purcell* merely guides courts in deciding whether to grant injunctive relief affecting conduct of *an* election, not whether *any* election-related claims should be dismissed." OB 55-56. The County Defendants do not respond to this argument, and never cite *Purcell*. The Secretary argues that *Purcell* can be grounds to deny a specific form of relief such as injunctive relief concerning an upcoming election. The Secretary does not argue that *Purcell* provides a basis to dismiss the Amended Complaint. Secretary Br. 48.

Hence the Defendants' briefs implicitly concede that *Purcell* does not justify dismissal of the Amended Complaint. The Secretary's discussion of *Purcell* is a diversion. Whether one type of temporary relief may be granted with respect to a claim does not affect the claim's validity or justify its dismissal. *Cal. Dep't of Soc. Servs.*, 321 F.3d at 857; *Nautilus Ins. Co.*, No. 17-16265, 2021 U.S. App. LEXIS 23541, at *3; *Doe*, 753 F.2d at 1104.

The District Court's denial of injunctive relief with respect to the 2022 election cannot be undone. The Candidates did not appeal that denial. It is not at issue. The question before the Court is whether the Candidates' claims should have been dismissed altogether on the basis of *Purcell*. The answer is no.

## II.    CONCLUSION

The District Court's decision should be reversed and remanded. The Candidates have a right to challenge the Arizona vote counting system and the Federal Rules grant them an opportunity to prove their factual allegations.

Respectfully submitted,

DATED: April 21, 2023                    **PARKER DANIELS KIBORT LLC**

By */s/ Andrew D. Parker*
    Andrew D. Parker (AZ Bar No. 028314)
    888 Colwell Building
    123 N. Third Street
    Minneapolis, MN 55401
    Telephone: (612) 355-4100
    Facsimile: (612) 355-4101
    parker@parkerdk.com

**OLSEN LAW, P.C.**
By */s/ Kurt Olsen*
    Kurt Olsen (D.C. Bar No. 445279)
    1250 Connecticut Ave., NW, Suite 700
    Washington, DC 20036
    Telephone: (202) 408-7025
    ko@olsenlawpc.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 21, 2023, I filed the foregoing Appellants'
Reply Brief with the Clerk of the Court for the United States Court of Appeals
for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and
that service will be accomplished by the appellate CM/ECF system.


*/s/   Andrew D. Parker*
Andrew D. Parker

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 22-16413

I am the attorney or self-represented party.

**This brief contains** 8,359 **words,** including 0 words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

⦿ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.

☒ a party or parties are filing a single brief in response to multiple briefs.

☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated _____ .

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /s/ Andrew D. Parker **Date** 4/21/2023

*(use* "s/[typed name]" *to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8** *Rev. 12/01/22*