# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

Kari Lake, Mark Finchem,

*Plaintiffs-Appellants*,

v.

Kathleen Hobbs, as Arizona Secretary of State; Bill Gates, Clint Hickman, Jack Sellers, Thomas Galvin, and Steve Gallardo, in their capacity as members of the Maricopa Board of Supervisors; Rex Scott, Matt Heinz, Sharon Bronson, Steve Christy, Adelita Grijalva, as Members of the Pima County Board of Supervisors,

Defendants-Appellees.

On Appeal from the United States District Court
for the District of Arizona
No. 22-cv-00677-JJT
Hon. John J. Tuchi

## Appellants' Motion to Recall Mandate

Kurt Olsen
(DC Bar No. 445279)
Olsen Law, P.C.
1250 Connecticut Ave., NW
Suite 700
Washington, DC 20036
(202) 408-7025
ko@olsenlawpc.com

*Attorney for Appellants*
*Kari Lake and Mark Finchem*

# TABLE OF CONTENTS

Addendum ........................................................................................................ ii

Table of Authorities ............................................................................................ i

Introduction ...................................................................................................... 1

Appellees' False statements ................................................................................ 2

New Developments ........................................................................................... 4

    Contrary to its representations, Maricopa uses illegally altered election
    software. ..................................................................................................... 5

    Contrary to its representations, Maricopa does not perform required
    L&A testing. ............................................................................................... 6

    Appellees failed to correct their false material statements. ............................... 7

Standard of Review .......................................................................................... 7

Argument ........................................................................................................ 8

I.    This Court has authority to recall the mandate. .............................................. 8

II.   Appellants' motion is timely. ...................................................................... 9

III.  Recalling the mandate is warranted. ........................................................... 10

    A.   Maricopa's election misconduct violates due process. ........................... 10

    B.   Appellees' counsel engaged in fraud on the court. ................................ 11

        1.   Appellees materially misrepresented Maricopa's election
            security. ................................................................................... 12

        2.   Arizona's robust duty to correct applies to federal civil-rights
            appeals. ................................................................................... 14

        3.   Appellees' knowing failure to correct their
            misrepresentations constitute willful deceit. .............................. 16

    C.   Recalling the mandate is necessary to revisit whether Appellants
        pled a valid injury-in-fact under Article III. ........................................ 17

        1.   Appellants' injuries are not speculative under Article III. ............. 18

        2.   Appellants' injuries are not generalized under Article III. ............ 20

            a.   New evidence and allegations preclude mootness for
               "candidate standing." ...................................................... 21

            b.   Appellants' new evidence requires revisiting whether
               voters allege particularized concrete injury. ...................... 22

    D.   The District Court's other bases for dismissal were meritless. ............... 24

Conclusion ..................................................................................................... 24

Certificate of Compliance ..........................................................................26

Certificate of Service ...................................................................................i

## **ADDENDUM**

*Lake v. Fontes*, No. 22-16413 (Oct. 16, 2023) ........................................ 1a

ARIZ. R. PROF'L. COND. 1.6.................................................................. 12a

ARIZ. R. PROF'L. COND. 3.3.................................................................. 19a

Supreme Court of Arizona, Attorney Ethics Advisory Committee, Ethics
    Opinion EO-20-0007, 1 (May 19, 2021) .......................................25a

Ariz. Sec'y of State, 2019 Elections Procedures Manual (excerpt) .....................35a

Maricopa County Election Facts—Voting Equipment & Accuracy (excerpt)......39a

Letter from Kurt B. Olsen to Appellees' Counsel (Apr. 2, 2024) ........................41a

Declaration of Clay U. Parikh (Mar. 18, 2024) ......................................67a

Second Declaration of Benjamin R. Cotton (Mar. 19, 2024) ............................110a

Letter from Rachel Mitchell, Maricopa County Attorney, to Kurt B. Olsen
    (Apr. 10, 2024) ........................................................................ 196a

Letter from Kara Karlson, Arizona Office of Attorney General, to Kurt B.
    Olsen (Apr. 11, 2024) .............................................................. 198a

# TABLE OF AUTHORITIES

## CASES

*Ariz. Democratic Party v. Hobbs*,
  18 F.4th 1179 (9th Cir. 2021) ....................................................11

*Village of Arlington Heights v. Metro. Hous. Dev. Corp.*,
  429 U.S. 252 (1977)....................................................................11

*Bateson v. Geisse*,
  857 F.2d 1300 (9th Cir. 1988) ...................................................11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)....................................................................18

*Bennett v. Yoshina*,
  140 F.3d 1218 (9th Cir. 1998) ...................................................11

*Calderon v. Thompson*,
  523 U.S. 538 (1998)..................................................................8-9

*Carey v. Piphus*,
  435 U.S. 247 (1978)....................................................................22

*Carney v. Adams*,
  141 S.Ct. 493 (2020) ..................................................................17

*Carson v. Simon*,
  978 F.3d 1051 (8th Cir. 2020) ...................................................21

*Champlin v. Bank of Am., N.A.*,
  231 Ariz. 265 (App. 2013)..........................................................17

*City of Waukesha v. EPA*,
  320 F.3d 228 (D.C. Cir. 2003).....................................................18

*Clinton v. City of New York*,
  524 U.S. 417 (1998)....................................................................19

*Coleman v. Turpen*,
  827 F.2d 667 (10th Cir. 1987) ....................................................20

*Council of Insurance Agents & Brokers v. Molasky-Arman*,
  522 F.3d 925 (9th Cir. 2008) ......................................................23

*Curling v. Raffensperger*,
  ___ F.Supp.3d ___ (N.D. Ga. Nov. 10, 2023).............................20

*Dixon v. Comm'r of Internal Revenue*,
  316 F.3d 1041 (9th Cir. 2003) ....................................................10

*Eat Right Foods, Ltd. v. Whole Foods Mkt., Inc.*,
  880 F.3d 1109 (9th Cir. 2017) ......................................................9

*Ex parte Young*,
  209 U.S. 123 (1908)..............................................................16, 24

*FEC v. Akins*,
  524 U.S. 11 (1998)................................................................21, 23

*Fortyune v. American Multi-Cinema, Inc.*,
  364 F.3d 1075 (9th Cir. 2004) ................................................ 18-19

*Gill v. Whitford*,
  585 U.S. 48 (2018).....................................................................21

*Golonka v. GMC*,
  204 Ariz. 575 (App. 2003)..........................................................14

*Gray v. Sanders*,
  372 U.S. 368 (1963)...................................................................23

*Hermann v. Brownell*,
  274 F.2d 842 (9th Cir. 1960) .......................................................9

*In re Alcorn*,
  202 Ariz. 62 (2002)....................................................................17

*In re Eashai*,
  87 F.3d 1082 (9th Cir. 1996) ......................................................17

*In re Fee*,
  182 Ariz. 597 (1995) .................................................................17

*In re Intermagnetics Am., Inc.*,
  926 F.2d 912 (9th Cir. 1991) ..................................................8, 16

*In re Levander*,
  180 F.3d 1114 (9th Cir. 1999) .........................................8, 12, 17

*In re Snyder*,
  472 U.S. 634 (1985)............................................................. 14-15

*Lake v. Fontes*,
  83 F.4th 1199 (9th Cir. 2023) ...........................................1-2, 8-9

*Lake v. Hobbs*,
  623 F.Supp.3d 1015, 1022-23 (D. Ariz. 2022)........................5, 12

ii

*Lance v. Coffman*,
    549 U.S. 437 (2007)..................................................................20, 23

*Lewert v. P.F. Chang's China Bistro, Inc.*,
    819 F.3d 963 (7th Cir. 2016) ......................................................20

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)..................................................................17, 19

*McConnell v. FEC,*
    540 U.S. 93 (2003)....................................................................17

*McCoy v. Court of Appeals, Dist. 1,*
    486 U.S. 429 (1988)..................................................................14

*Mecinas v. Hobbs*,
    30 F.4th 890 (9th Cir. 2022) ......................................................21

*Meyers v. Birdsong*,
    83 F.4th 1157 (9th Cir. 2023) ............................................. 7-8, 9

*Murphy v. DirecTV, Inc.*,
    724 F.3d 1218 (9th Cir. 2013) ...................................................14

*Northeastern Fla. Chapter of Associated Gen. Contractors of Am. v. City of*
    *Jacksonville*, 508 U.S. 656 (1993)................................................19

*Northern Ins. Co. v. Chatham Cty.*,
    547 U.S. 189 (2006)..................................................................24

*Northstar Fin. Advisors, Inc. v. Schwab Invs.*,
    779 F.3d 1036 (9th Cir. 2015) ...................................................18

*O'Shea v. Littleton*,
    414 U.S. 488 (1974)..................................................................18

*Ohio Forestry Ass'n, Inc., v. Sierra Club*,
    523 U.S. 726 (1998)..................................................................19

*Owen v. Mulligan*,
    640 F.2d 1130 (9th Cir. 1981) ...................................................22

*Pumphrey v. K.W. Thompson Tool Co.*,
    62 F.3d 1128 (9th Cir. 1995) ...................................................8, 17

*Regents of the Univ. of California v. Bakke*,
    438 U.S. 265 (1978)..................................................................19

*Reynolds v. Sims*,
    377 U.S. 533 (1964)..................................................................23

*Ruvalcaba v. City of Los Angeles*,
    167 F.3d 514 (9th Cir. 1999) ........................................................22

*Silva v. Traver*,
    63 Ariz. 364 (1945)......................................................................14

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016)..............................................................21, 23

*State v. Quatsling*,
    24 Ariz. App. 105 (App. 1975)....................................................14

*Storer v. Brown*,
    415 U.S. 724 (1974).............................................................10, 21

*Summers v. Earth Island Institute*,
    555 U.S. 488 (2009)....................................................................17

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014)................................................................ 19-20

*Trump v. Wis. Elections Comm'n*,
    983 F.3d 919 (7th Cir. 2020) ......................................................21

*Tyler v. Cuomo*,
    236 F.3d 1124 (9th Cir. 2000) ............................................... 17-18

*United States v. Classic*,
    313 U.S. 299 (1941)....................................................................23

*United States v. Harris*,
    185 F.3d 999 (9th Cir. 1999) ......................................................13

*United States v. Lozoya*,
    19 F.4th 1217 (9th Cir. 2021) (*en banc*)................................... 8-9

*United States v. Sierra Pac. Indus., Inc.*,
    862 F.3d 1157 (9th Cir. 2017) ....................................................12

*United States v. Students Challenging Regulatory Agency Procedures*,
    412 U.S. 669 (1973)....................................................................23

*Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*,
    535 U.S. 635 (2002)....................................................................24

*Webb v. Injured Workers Pharmacy, LLC*,
    72 F.4th 365 (1st Cir. 2023) ......................................................20

*Wheeler v. City of Santa Clara*,
    894 F.3d 1046 (9th Cir. 2018) ....................................................16

*Wolfson v. Brammer*,
  616 F.3d 1045 (9th Cir. 2010) ............................................................. 21-22

*Workman v. Bell*,
  227 F.3d 331 (6th Cir. 2000) (*en banc*) .......................................... 9

*Wyle v. R.J. Reynolds Indus., Inc.*,
  709 F.2d 585 (9th Cir. 1983) ............................................................. 13-14

## STATUTES

U.S. CONST. art. III ....................................................... 2, 10-11, 17-20, 23

U.S. CONST. amend. XIV, §1, cl. 3 ................................................... 10

28 U.S.C. §1653 ...................................................................................... 18

42 U.S.C. §1983 ...................................................................................... 16

42 U.S.C. §1988(a) ................................................................................ 16

ARIZ. CONST. art. VII, §7 ...................................................................... 10

ARIZ. CONST. art. VII, §12 .................................................................... 10

A.R.S. §16-442(A)-(C) ...................................................................... 1-2, 5

A.R.S. §16-452(C) .............................................................................. 6, 14

A.R.S. §16-1004(B) ................................................................................ 14

A.R.S. §16-1009 ...................................................................................... 14

A.R.S. §16-1010 ...................................................................................... 14

## REGULATIONS AND RULES

FED. R. APP. P. 46(c) ............................................................................. 14

S.CT. R. 8.2 .............................................................................................. 14

ARIZ. R. PROF'L. COND. 1.6(a) ............................................................ 15

ARIZ. R. PROF'L. COND. 3.3 ................................................................ 16

ARIZ. R. PROF'L. COND. 3.3(a) ........................................................... 15

ARIZ. R. PROF'L. COND. 3.3(a)(1) ................................................. 14-16

ARIZ. R. PROF'L. COND. 3.3(a)(3) ................................................. 15-16

ARIZ. R. PROF'L. COND. 3.3 cmt. 13 ................................................. 16

# OTHER AUTHORITIES

Supreme Court of Arizona, Attorney Ethics Advisory Committee, Ethics
      Opinion EO-20-0007, 1 (May 19, 2021) .................................................. 15-16

## INTRODUCTION

Appellants respectfully move to recall the mandate based on newly discovered evidence revealing appellees Maricopa County and the Arizona Secretary of State ("SoS") misled this Court, the district court, and the Supreme Court about two critical issues central to this Court's decision affirming dismissal of this action based on lack of standing. Specifically, those appellees made two false claims about the safeguards purportedly protecting Maricopa's elections:

- ***First***, that Maricopa used election software certified by the Election Assistance Commission ("EAC") and approved by the SoS for use in Arizona elections pursuant to A.R.S. §16-442(A)-(C).

- ***Second***, that Maricopa conducted pre-election logic and accuracy ("L&A") testing on all tabulators used in its elections as A.R.S. §16-449(A)-(B) mandates.

This Court expressly relied on those false claims:

> Before being certified for use in elections, the tabulation machines are tested by an accredited laboratory and the Secretary of State's Certification Committee. Ariz. Rev. Stat. § 16-442…The certified machines are then subjected to pre-election logic and accuracy tests by the Secretary of State and the election officials of each county. Ariz. Rev. Stat. § 16-449; Ariz. Sec'y of State, 2019 Election Procedures Manual ("2019 EPM") at 86.

*Lake v. Fontes*, 83 F.4th 1199, 1202 (9th Cir. 2023) (Add:6a).

To the contrary, new evidence produced by Maricopa shows that Maricopa

uses illegally altered election software that is neither EAC-certified nor certified for use in Arizona, thus violating A.R.S. §16-442(A)-(B). Further violating Arizona law, Maricopa does not conduct L&A testing on any tabulators actually used in its elections, thus violating A.R.S. §16-449(A)-(B). Maricopa's violations of Arizona law mean its elections have not been shown to be any more reliable than a Ouija board. Both as voters and as past and current candidates, Appellants can thus demonstrate Article III injuries that are imminent and particularized, not speculative and generalized.

When Appellants timely demanded that Appellees correct their false statements, Appellees refused to make the required corrections. Under the fraud-on-the-court standards, this Court should recall the mandate, reverse, and remand for expeditious proceedings, especially given the upcoming 2024 election.

## APPELLEES' FALSE STATEMENTS

In finding Appellants' injuries too speculative and generalized for Article III, this Court relied on two material misrepresentations made by Appellees:

- Maricopa used EAC-certified election software approved by the Arizona SoS.

- Maricopa conducted pre-election L&A testing mandated by Arizona law.

*Lake*, 83 F.4th at 1202 (Add:6a); *id*. at 1204 ("In the end, none of Plaintiffs' allegations supports a plausible inference that their individual votes in future elections will be adversely affected by the use of electronic tabulation, ***particularly***

2

*given the robust safeguards in Arizona law*, the use of paper ballots, and the post-tabulation retention of those ballots.") (emphasis added) (Add:11a).

The Court's reliance on these two misrepresentations arose from Maricopa and the SoS—initially Katie Hobbs, now Adrian Fontes—repeating them at least *fourteen times* in briefing to the district court and this Court. Add:50a-53a (Exhibit A to Appellants' April 2, 2024 letter to Appellees' counsel). Moreover, in opposing Appellants' motion for a preliminary injunction, Maricopa submitted the *sworn testimony* of its Co-Director of Maricopa Elections, Scott Jarrett, who testified to these two issues.

First, Jarrett testified that Maricopa used Dominion Voting Systems Democracy Suite 5.5B election software "certified by the Election Assistance Commission for use in elections on September 10, 2019" in the configuration shown "at    https://www.eac.gov/votingequipment/democracy-suite-55b-modification." Jarrett Decl. ¶¶5-10 (ECF #57-1). Federal certification is critical to election software's reliability and integrity. As Jarrett testified, "[a]s part of the federal certification, tabulation equipment must undergo reliability and security testing to ensure equipment adequately prevents and detects unauthorized access … [and] accurately tabulate[s] votes." *Id*. at ¶12. Jarrett also testified that the SoS "approved Dominion Democracy Suite 5.5B for use in Arizona on November 5, 2019. *Id*. at ¶13.

Second, Jarrett testified that Maricopa conducted L&A testing "to ensure the tabulation equipment is accurately counting the ballots as programmed." *Id*. at ¶15. Maricopa also submitted a detailed chart in its motion to dismiss claiming its election software is "U.S. EAC and AZ SOS certified" and its tabulators are logic-and-accuracy tested. Maricopa Mot. to Dismiss, at 3 (June 7, 2022) (ECF #27). In addition, Maricopa told this Court that incidents of voting machine security failures in other states "have nothing to do with Arizona and ***its certified tabulation equipment***." Maricopa Br. at 13 (Mar. 31, 2023) (emphasis added).

Similarly, Secretary Fontes captioned an entire section of its brief to this Court as "All Electronic Voting Systems, Tabulation Equipment, And BMDs For The 2022 Elections Were Tested And Certified." Fontes Br. at pp. 10-11 (Mar. 30, 2023). Fontes stated in the same brief that: "Each of Arizona's fifteen counties perform logic and accuracy testing on vote tabulating equipment before and after an election." *Id*. at 9 (citing 2019 EPM at 86).

## NEW DEVELOPMENTS

Maricopa's own tabulator system log ("SLOG") files show that Maricopa used illegally altered election software that neither the EAC certified nor the SoS approved, and that Maricopa did not perform L&A testing on any tabulators actually used in the elections, in violation of Arizona law. Maricopa's election systems have never been either tested or certified as accurate and—having been altered—are *per*

*se* unreliable. Appellants' new evidence shows imminent, particularized injury from Maricopa's use of illegally altered election software and failure to conduct pre-election L&A testing on its vote-center election equipment.

**Contrary to its representations, Maricopa uses illegally altered election software.**

Instead of the certified and approved election software that Maricopa claimed to use, ER:12, the SLOG files produced by Maricopa for the 2020 election show that Maricopa used software altered from the certified version with respect to "machine behavior settings" ("MBS") that govern how ballots are read and tabulated. The software Maricopa actually uses is neither EAC-certified nor approved for use in Arizona, in violation of Arizona law. A.R.S. §16-442(A)-(C). As Appellants' cyber expert, Clay Parikh, testified:

> The tabulator system log files reveal that the Dominion election software Maricopa County used in the 2020 and 2022 General Elections is an uncertified home-brew version that inserts Democracy Suite software version 5.10 MBS into the approved and certified Democracy Suite 5.5B. This configuration has not been tested by the VSTL Pro V&V, nor been certified by the EAC, and has not been certified for use in Arizona by the Secretary of State.

Parikh Dec. ¶20 (Add:73a-74a); *id.* at ¶¶11(a)-(d), 13-29, 42-47, 53 (Add:69a-76a, 79a-80a, 82a); Cotton Decl. ¶20(a) ("The election software Maricopa County used in the November 2020 and November 2022 elections has been materially altered from the EAC and Arizona Secretary of State certified DVD D-Suite 5.5B")

(Add:112a); *id.* ¶¶21-22, 29 (Add:113a-117a, 123a).

Parikh is particularly well-qualified to render this opinion. Pro V&V, the same voting system lab that performed EAC-certification testing for Maricopa, retained Parikh between 2008 and 2017 to perform EAC-certification testing. Parikh Dec. ¶4 (Add:68a). Election results derived from this uncertified and altered software are *per se* unreliable. Parikh Decl. ¶¶28, 53 (Add:76a, 82a); Cotton Decl. ¶29 (Add:123a). The SLOG files produced for the November 2022 election show that Maricopa used the same altered software in that election **after** the District Court dismissed Appellants' complaint. *Id.*

## Contrary to its representations, Maricopa does not perform required L&A testing.

Arizona requires L&A testing "to ascertain that the equipment and programs will correctly count the votes cast for all offices and on all measures." A.R.S. §16-449(A). A.R.S. §16-449(A) expressly references A.R.S. §16-452, which provides, *inter alia*, that EPM violations are misdemeanors. A.R.S. §16-452(C). The EPM mandates that "all of the county's deployable voting equipment must be [L&A] tested." 2019 EPM, 94-95 (Add:37a-38a).

Contrary to Maricopa's representations to the district court and this Court, Maricopa did not conduct statutorily mandated pre-election L&A testing on any of

its vote-center tabulators prior to the November 2020 election.[1] Parikh Decl. ¶¶30-41 (Add:76a-79a). Instead, Maricopa L&A tested only five spare tabulators in connection with the 2020 election. *Id*. ¶34 (Add:77a). Likewise, Maricopa's pre-election L&A testing covered only five spare tabulators for the November 2022 election. *Id*.

**Appellees failed to correct their false material statements.**

Before the Supreme Court denied Appellants' petition, Appellants asked Appellees to file corrections. Letter from Kurt B. Olsen to Appellees' Counsel (Apr. 2, 2024) (Add:41a-47a). Without substantively addressing Appellants' new evidence, Appellees declined to correct. Letter from Rachel Mitchell, Maricopa County Attorney (Apr. 10, 2024) (Add:196a-197a); Letter from Kara Karlson, Office of Arizona Attorney General (Apr. 11, 2024) (Add:198a).[2]

## STANDARD OF REVIEW

Recalling a mandate is an "extraordinary remedy" that courts grant only in "exceptional circumstances … for good cause or to prevent injustice." *Meyers v.*

---

[1] Maricopa conducts its elections at over two hundred vote centers, with two tabulators each for scanning and processing ballots. *Id*. ¶10 (Add:69a).

[2] The new allegations to support standing included evidence that Maricopa's voting machines leave the master cryptographic encryption keys unprotected and in plain text, thereby allowing any malicious actor to take control of the machines and the election results—without detection. Parikh Decl. (¶¶12, 48-53) (Add:71a, 80a-82a); Cotton Decl. (¶¶20(c), 23-25, 29) (Add:112a-113a, 117a-119a, 123a).

*Birdsong*, 83 F.4th 1157, 1159-60 (9th Cir. 2023); *Calderon v. Thompson*, 523 U.S. 538, 558 (1998) ("need to allow courts to remedy actual injustice"). Unambiguous reasons to recall a mandate include remedying "fraud upon the court, calling into question the very legitimacy of the judgment." *Calderon*, 523 U.S. at 557; *In re Levander*, 180 F.3d 1114, 1119 (9th Cir. 1999).

This Court defines fraud on the court as "fraud which does or attempts to defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery [cannot] perform in the usual manner its impartial task of adjudging cases." *In re Intermagnetics Am., Inc.*, 926 F.2d 912, 916 (9th Cir. 1991) (interior quotation omitted); *Levander*, 180 F.3d at 1120 (finding fraud on the court where "neither the Levanders nor the court had any reason to question the veracity of the Corporation['s testimony]"); *Pumphrey v. K.W. Thompson Tool Co.*, 62 F.3d 1128, 1132 (9th Cir. 1995) ("the use of misleading, inaccurate, and incomplete responses to discovery requests, the presentation of fraudulent evidence, and the failure to correct the false impression created by [witness'] testimony … amounts to a fraud upon the court.").

## ARGUMENT

## I.   THIS COURT HAS AUTHORITY TO RECALL THE MANDATE.

Federal courts of appeals have "inherent power to recall [their] mandate in order to protect the integrity of [their] processes." *United States v. Lozoya*, 19 F.4th

1217, 1218 (9th Cir. 2021) (*en banc*). Proper grounds for recalling a mandate include fraud on the court. *Calderon*, 523 U.S. at 557; *Workman v. Bell*, 227 F.3d 331, 337 (6th Cir. 2000) (*en banc*) (recalling mandate and ordering district court to hold a "full evidentiary hearing to determine whether or not a fraud was committed on the district court or the panel below").

## II. APPELLANTS' MOTION IS TIMELY.

Motions to recall must be timely. *Meyers*, 83 F.4th at 1159. The evidence of Appellees' fraud upon the Court only recently came to light, Parikh Decl. ¶6 (Add:68a), and Appellants filed quickly after the Supreme Court denied a writ of *certiorari* in this matter.

Indeed, while review was pending in the Supreme Court, this Court arguably lacked jurisdiction to revise its holding. *Hermann v. Brownell*, 274 F.2d 842, 843 (9th Cir. 1960) ("this Court completely loses jurisdiction of the cause" upon a petition for a writ of *certiorari*, and its "jurisdiction can be revived only upon the mandate of the Supreme Court itself"). Accordingly, the timeliness of Appellants' motion measures from the denial of *certiorari* on April 22, 2024. Moreover, laches requires not only unreasonable delay but also prejudice, *Eat Right Foods, Ltd. v. Whole Foods Mkt., Inc.*, 880 F.3d 1109, 1119 (9th Cir. 2017), neither of which is present.

Further, remedying injustice and fraud on the court—as well as safeguarding

future elections—outweighs any interest in repose. *See* Section III, *infra*.

## III.  RECALLING THE MANDATE IS WARRANTED.

This Court found Appellants' alleged injuries too speculative (*i.e.*, not imminent) and generalized (*i.e.*, not particularized and concrete) to constitute an injury-in-fact under Article III. Appellants' new evidence showing a fraud on the Court contravenes those findings. Appellees cannot now dispute the effectiveness of their misrepresentations. *Dixon v. Comm'r of Internal Revenue*, 316 F.3d 1041, 1046 (9th Cir. 2003). Their falsehoods misled this Court to find Appellants' injuries did not support standing.

### A.  Maricopa's election misconduct violates due process.

Under Arizona law, winning elections means "receiving the highest number of *legal* votes," ARIZ. CONST. art. VII, §7 (emphasis added), and legality is defined by election statutes adopted "to secure the purity of elections and guard against abuses of the elective franchise." *Id.* art. VII, §12; *Storer v. Brown*, 415 U.S. 724, 730 (1974) ("substantial regulation of elections" required "if [elections] are to be fair and honest"). Under the Due Process Clause, Arizona's voters and candidates have constitutionally protected interests in having their elections conducted pursuant to Arizona and federal law. U.S. CONST. amend. XIV, §1, cl. 3.

The use of uncertified and illegally altered software, especially combined with the failure to test vote-center tabulators, fundamentally compromises Maricopa's

elections. Maricopa's uncertified, untested voting system makes Maricopa's manner of conducting elections "fundamentally unfair" in violation of substantive due process. *Bennett v. Yoshina*, 140 F.3d 1218, 1226 (9th Cir. 1998). Even without drawing negative inferences from Maricopa's surreptitious electoral misconduct, deceptive court filings, and failure to correct, *see* Section III.B, *infra*, Maricopa has not shown its election systems are any more reliable than a Ouija board. Exposing voters' and candidates' fundamental electoral rights to an unreliable, untested, and illegal system nullifies the right to vote, which is the type of "arbitrary or irrational" government action that supports Article III standing. *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 263 (1977) (discussing developer's "right to be free of arbitrary or irrational zoning actions" under Article III); *Bateson v. Geisse*, 857 F.2d 1300, 1305 (9th Cir. 1988).

While Appellants' injuries meet the stringent test for substantive due process and the lesser "*Anderson-Burdick*" framework "for evaluating procedural due process challenges **to a voting restriction**," *Ariz. Democratic Party v. Hobbs*, 18 F.4th 1179, 1194-95 (9th Cir. 2021) (emphasis added), this Court need no decide those issues. When a political subdivision's elections **violate state law**, there is no cognizable state interest capable of outweighing the plaintiffs' due-process rights.

**B.** **Appellees' counsel engaged in fraud on the court.**

Appellees' misrepresentations go to the outcome-determinative central

issue—whether the purportedly certified and tested equipment was sufficiently secure to avoid impairing electoral rights. Given the falsity of Appellees' representations and this Court's reliance, this case falls in the heartland of fraud on the court, *Levander*, 180 F.3d at 1120. The new evidence demonstrates that Appellees made these claims knowing that they were false.

### 1. Appellees materially misrepresented Maricopa's election security.

"[A] finding of fraud on the court is reserved for material, intentional misrepresentations that could not have been discovered earlier[.]" *United States v. Sierra Pac. Indus., Inc.*, 862 F.3d 1157, 1169 (9th Cir. 2017). Although Maricopa's false statements caused a jurisdictional dismissal that denied Appellants discovery, Appellants diligently pursued relevant facts. Maricopa's and the SoS's intentionally false material statements—made by their counsel in court and relied on by the courts—constitute fraud on the court.

The District Court and this Court expressly relied on Appellees' false statements about Maricopa's compliance with the laws that mandate using certified software and L&A testing. Opinion, Add:6a (this Court); Opinion, ER:12-14, 19-21 (District Court).

Appellees' court filings can only have been knowingly false. Indeed, Maricopa represents on its website that "[p]rior to the L&A [testing] … a copy of the software is forwarded to the [SoS]", and that "[p]rior to each election, the

software and hash code are verified to confirm the software system being used for the election is the same system that underwent certification."[3] Maricopa thus ***admits*** it reviewed the software and hash codes to confirm the software's certification and sent the SoS a copy of the software. Therefore, that confirmation process would have informed Maricopa and the SoS that Maricopa's software was not the EAC-certified version because the software hash codes do ***not*** match the EAC-certified version and Maricopa's SLOG files show Maricopa's election software is a "home-brew" concoction. Parikh Decl. ¶¶20, 42-47, 53 (Add:73a-74a, 79a-80a, 82a); Cotton Decl. ¶¶21-22, 28-29 (Add:113a-117a, 121a-123a).

Putting aside that Maricopa would obviously know the number of tabulators it L&A tested, Maricopa also states on its website that the SoS was present at Maricopa's October 6, 2020 L&A test. *Id*. Thus, the SoS would also know Maricopa only L&A tested five tabulators, not "all deployable voting equipment" as required by the EPM.

This Court can infer deceptive intent from Appellees' surreptitious means and concealment. *United States v. Harris*, 185 F.3d 999, 1006 (9th Cir. 1999) ("[i]ntent could be inferred from the tricks and deceptions [defendant] used to cover up what he did"); *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 590 (9th Cir. 1983)

---

[3] https://www.maricopa.gov/5539/Voting-Equipment-Facts (Add:40a) (last visited June 6, 2024).

(failing to investigate can qualify as equivalent of knowing truth); *State v. Quatsling*, 24 Ariz. App. 105, 108 (App. 1975) (discussing "circumstantial evidence to sustain a finding of intent based upon … surreptitious means).

Although public officials can benefit from presumptions of regularity, "[w]henever evidence contradicting a legal presumption is introduced the presumption vanishes." *Silva v. Traver*, 63 Ariz. 364, 368 (1945); *Golonka v. GMC*, 204 Ariz. 575, 589-90, ¶48 (App. 2003) (discussing Arizona's "bursting bubble" treatment of presumptions). Violations of the EPM's mandates and the unapproved alteration of election software are criminal violations. A.R.S. §§16-452(C), 16-1009, 16-1004(B), 16-1010. This Court should not presume that Maricopa or its counsel acted lawfully.

### 2. Arizona's robust duty to correct applies to federal civil-rights appeals.

Rule 46(c) imposes ethical duties on bar members, FED. R. APP. P. 46(c); *accord* S.CT. R. 8.2, based on "case law, applicable court rules, and 'the lore of the profession,' as embodied in codes of professional conduct." *In re Snyder*, 472 U.S. 634, 645 (1985). Although the duty of candor is universal in American law, *McCoy v. Court of Appeals, Dist. 1*, 486 U.S. 429, 440 (1988); *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1233 n.9 (9th Cir. 2013), Arizona's Rule 3.3(a)(1) arguably goes ***beyond*** the federal rules' duty to correct.

Under Rule 3.3(a)(1), lawyers must not knowingly either "make a false

statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer." ARIZ. R. PROF'L. COND. 3.3(a)(1). Regardless of whether Appellees' counsel initially knew their filed statements were false, they had notice to that effect after April 2, 2024, when Appellants' counsel alerted them to their false representations. Add:41a-47a. Rule 3.3(a)(3)'s duty to correct includes disclosure to the tribunal. ARIZ. R. PROF'L. COND. 3.3(a)(3) (Add:19a-20a).[4] The Arizona Supreme Court's Attorney Ethics Advisory Committee recently found the Arizona duty of candor overcomes counsel's duty of confidentiality to clients who benefited from prior false evidence. Supreme Court of Arizona, Attorney Ethics Advisory Committee, Ethics Opinion EO-20-0007, 1 (May 19, 2021) (Add:25a) ("EO-20-0007").

Arizona law strengthens the federal duty of candor by removing client confidences as valid grounds ***not to correct***. *See Snyder*, 472 U.S. at 644 (discussing "attorney's dual obligations to clients and to the system of justice"). Unlike counsel in other federal forums, Arizona counsel cannot rely upon client obligations to justify failing to correct.

For federal civil-rights actions in Arizona, Arizona's Rule 3.3(a) applies directly ***as federal law***, rather than indirectly under *Snyder*. Appellants invoke both

---

[4] Arizona lawyers' duty of confidentiality to clients does not cover disclosures required by Rule 3.3(a)(3). ARIZ. R. PROF'L. COND. 1.6(a) (Add:12a).

the officer-suit exception of *Ex parte Young* and 42 U.S.C. §1983. Am. Compl. ¶¶177-183 (ER:89-90). Consequently, "the common law, as modified and changed by the constitution and statutes of the State[,]" applies to this action because it is "not inconsistent with the Constitution and laws of the United States." 42 U.S.C. §1988(a); *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1051-52 (9th Cir. 2018) (using state law under §1988(a)).

### 3. Appellees' knowing failure to correct their misrepresentations constitute willful deceit.

Appellees' counsel also committed a fraud on the Supreme Court in 2024 under this Court's definition of "fraud upon the court." *Intermagnetics*, 926 F.2d at 916 (*i.e.*, courts' reliance on counsel's false material statements). Whether directly under 42 U.S.C. §1988(a) or indirectly by removing confidentiality for clients' misrepresentations, Arizona law controls and required correction. ARIZ. R. PROF'L. COND. 1.6(a), 3.3(a)(1), 3.3(a)(3); EO-20-0007, at 1 (Add:25a). The duty of candor applies throughout any appeal. ARIZ. R. PROF'L. COND. 3.3 cmt. 13 (Add:23a). Thus, by not filing in this Court when it had an unambiguous duty to correct, Maricopa's counsel also committed a fraud on *this* Court.

Silence is not an option. Both declining to apprise this Court of prior misrepresentations and waiving a response in the Supreme Court violated Appellees' duty to correct:

> Simply filing a non-opposition notice, as she did here, is
> insufficient to discharge this duty.

*Champlin v. Bank of Am., N.A.*, 231 Ariz. 265, 268, ¶17 (App. 2013); *In re Alcorn*,

202 Ariz. 62, 73, ¶38 (2002) ("lawyer [cannot] remain silent while knowing that

such silence has the effect of misleading the court"); *In re Fee*, 182 Ariz. 597, 600-

01 (1995); *Pumphrey*, 62 F.3d at 1132-33; *Levander*, 180 F.3d at 1119; *In re Eashai*,

87 F.3d 1082, 1089 (9th Cir. 1996).

### C.  Recalling the mandate is necessary to revisit whether Appellants pled a valid injury-in-fact under Article III.

Standing's tripartite test requires: (a) injury-in-fact to plaintiffs, (b) causation

by the challenged conduct, and (c) judicial redressability. *Lujan v. Defenders of*

*Wildlife*, 504 U.S. 555, 561-62 (1992). Injury must be actual or imminent, not merely

speculative, conjectural, or hypothetical. *Summers v. Earth Island Institute*, 555 U.S.

488, 493 (2009). Further, injury must be "concrete and particularized" to the

plaintiff, not an "abstract generalized grievance suffered by all citizens." *Carney v.*

*Adams*, 141 S.Ct. 493, 498-99 (2020).

Significantly, "standing in no way depends on the merits of the plaintiff's

contention that particular conduct is illegal." *McConnell v. FEC,* 540 U.S. 93, 227

(2003) (internal quotations omitted). Thus, "[w]hether a plaintiff has a legally

protected interest (and thus standing) does not depend on whether he can

demonstrate that he will succeed on the merits." *Tyler v. Cuomo*, 236 F.3d 1124,

1133 (9th Cir. 2000). Accordingly, to evaluate standing, courts "assume that on the merits the plaintiffs would be successful in their claims." *City of Waukesha v. EPA*, 320 F.3d 228, 235 (D.C. Cir. 2003). Otherwise, every losing plaintiff would lack standing.

### 1.    Appellants' injuries are not speculative under Article III.

Appellants' new evidence demonstrates the imminent, non-speculative nature of Appellants' threatened injuries.

Factually, Maricopa's use of illegally altered software and failure to conduct pre-election L&A testing, both in the 2020 election (before Appellants filed suit), 28 U.S.C. §1653 (facts that pre-dating complaint can establish jurisdiction, even on appeal), and in the 2022 election (after Appellants filed suit) substantiate Appellants' claims of past harm while demonstrating the plausibility of the complaint's allegations of threatened harms. *Northstar Fin. Advisors, Inc. v. Schwab Invs.*, 779 F.3d 1036, 1043-48 (9th Cir. 2015) (facts post-dating complaint can establish standing). Appellants' claims thus "[]cross the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Legally, these issues coalesce under various strands of Article III authority:

- Prior injuries can demonstrate the imminence of future injuries. *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974) ("past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury"); *Fortyune v.*

*American Multi-Cinema, Inc.*, 364 F.3d 1075, 1081 (9th Cir. 2004); *cf. Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 164 (2014) ("history of past enforcement" is obvious evidence of "substantial" threat of future enforcement).

- Because Maricopa does not count votes using certified election software and L&A test procedures established to protect the accuracy of the vote, Appellants suffer procedural injuries, which lower Article III's threshold for immediacy and redressability. *Lujan*, 504 U.S. at 571-72 & n.7; *cf. Ohio Forestry Ass'n, Inc., v. Sierra Club*, 523 U.S. 726, 737 (1998) (plaintiff "may complain at the time … that failure … takes place, for the [procedural] claim can never get riper").

- Relatedly, injuries that affect the opportunity to compete occur when the barrier to competition is encountered, not when the ultimate benefit is denied (*e.g.*, school admissions, contract awards, and winning elections). *Northeastern Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993); *Clinton v. City of New York*, 524 U.S. 417, 433 n.22 (1998). The standing injury is procedural mistreatment. The ultimate prize is "merely [a question] of relief," not of injury. *Regents of the Univ. of California v. Bakke*, 438 U.S. 265, 280 n.14 (1978).

- The fact that multiple actors can cause injury increases the threat of future

injury. *Driehaus*, 573 U.S. at 164; *Curling v. Raffensperger*, ___ F.Supp.3d ___, ___ (N.D. Ga. Nov. 10, 2023) ("Mueller Report's findings leave no doubt that Russia and other adversaries will strike again") (alterations and internal quotation omitted).

- Misconduct establishes imminence for cybersecurity breaches. *See*, *e.g.*, *Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 967-68 (7th Cir. 2016); *Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th 365, 375 (1st Cir. 2023). Malicious actors break laws and act surreptitiously for a reason.

Once appellate courts recognize that "some inquiry must be made as to whether or not false and misleading information has been deliberately or inadvertently furnished to the court," they can remand to trial courts "for an appropriate inquiry." *Coleman v. Turpen*, 827 F.2d 667, 670-71 (10th Cir. 1987). This Court can recognize that Appellants' new evidence demonstrates non-speculative future injury and remand for further proceedings.

### 2. Appellants' injuries are not generalized under Article III.

This Court found Appellants' injuries too generalized under *Lance v. Coffman*, 549 U.S. 437 (2007). Opinion, Add:9a. *Lance* merely held that generalized grievances cannot support standing where plaintiffs lacked "the sorts of injuries alleged … in voting rights cases." *Lance*, 549 U.S. at 442. *Lance* is simply inapposite to voting-rights plaintiffs.

An injury's widely shared nature does not foreclose finding it particularized to a given plaintiff. *FEC v. Akins*, 524 U.S. 11, 24 (1998) ("where a harm is concrete, though widely shared, the Court has found 'injury in fact'"); *Gill v. Whitford*, 585 U.S. 48, 65-66 (2018) (right to vote is personal and individual). "[I]ntangible injuries can nevertheless be concrete" if they affect plaintiffs "in a personal and individual way." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339-40 & n.7 (2016). The new evidence further supports finding that Appellants' injuries are concrete and particularized for both candidates and voters.

> **a.    New evidence and allegations preclude mootness for "candidate standing."**

Candidates "have ample standing to challenge" state election law. *Storer*, 415 U.S. at 738 n.9. An "inaccurate vote tally is a concrete and particularized injury to candidates." *Carson v. Simon*, 978 F.3d 1051, 1058 (8th Cir. 2020). Candidates thus have cognizable interests in a fair competition that voters may lack. *Mecinas v. Hobbs*, 30 F.4th 890, 897-900 (9th Cir. 2022); *Trump v. Wis. Elections Comm'n*, 983 F.3d 919, 924 (7th Cir. 2020). Where—as here—candidates seek office in future elections,[5] the passing of one election does not moot challenges to repeating election procedures. *Wolfson v. Brammer*, 616 F.3d 1045, 1055 (9th Cir. 2010) (collecting

---

[5] Appellants Lake and Finchem are 2024 candidates for federal and state office. https://azsos.gov/sites/default/files/docs/2024_CadidatesFiled_web_list_20240405.pdf (last visited June 6, 2024).

cases); *Owen v. Mulligan*, 640 F.2d 1130, 1132-33 & n.8 (9th Cir. 1981). Moreover, damages are available for violations of procedural due process, *Carey v. Piphus*, 435 U.S. 247, 266-67 (1978), including nominal relief against official-capacity defendants who lack sovereign immunity. *Ruvalcaba v. City of Los Angeles*, 167 F.3d 514, 524 & n.3 (9th Cir. 1999); *see* Section III.D, *infra*.; ER:95 (¶6). Because relief remains available—even for 2022—Appellants' standing as candidates would remain intact, even if they were not candidates in 2024 and subsequent elections.

### b. Appellants' new evidence requires revisiting whether voters allege particularized concrete injury.

Relying on false assurances supporting the presumption that Maricopa complies with electoral safeguards and viewing Appellants only as voters, this Court rejected standing in part because the Court found an imperceptible marginal risk of electronic skullduggery too diffuse and common to all voters and also common to other means of counting votes. Opinion, Add:10a-11a. Appellees' misrepresentations thus led the Court to an incorrect result.

Appellees asked voters—and this Court—to trust computers because experts reviewed them, tested them, and found them accurate. Now, we learn that Maricopa not only uses illegally altered election software with respect to the settings governing how ballots are read and tabulated but also does not perform pre-election L&A testing on all actual vote-center tabulators. Further, Maricopa and the SoS actively covered up these facts.

Maricopa's unreliable elections violate voters' fundamental voting rights, including the right to have votes accurately counted. *United States v. Classic*, 313 U.S. 299, 315 (1941); *Gray v. Sanders*, 372 U.S. 368, 379-81 (1963). Maricopa's voters suffer injury from unreliable vote counting. *Classic*, 313 U.S. at 315; *Reynolds v. Sims*, 377 U.S. 533, 554-55 (1964). Article III "allow[s] important interests to be vindicated by plaintiffs with no more at stake in the outcome of an action than a ***fraction of a vote***." *United States v. Students Challenging Regulatory Agency Procedures*, 412 U.S. 669, 689 n.14 (1973) (citations omitted, emphasis added); *Council of Insurance Agents & Brokers v. Molasky-Arman*, 522 F.3d 925, 932 (9th Cir. 2008). For voting-rights plaintiffs like Appellants, *Lance* is simply not contrary authority.

Appellants' injuries are widely shared, but are personally experienced by, and thus particularized to, every plaintiff. In *Akins*, a "widely shared" "informational injury … related to voting, the most basic of political rights, [was] sufficiently concrete and specific" to confer standing. *Akins*, 524 U.S. at 24-25; *Robins*, 578 U.S. at 339 n.7. Indeed, *Akins* explained that the existence of a concrete injury would be "particularly obvious … where large numbers of voters suffer interference with voting rights conferred by law." *Akins*, 524 U.S. at 24. Appellants allege such injuries here.

### D.    The District Court's other bases for dismissal were meritless.

The District Court also dismissed under sovereign immunity and *Purcell v. Gonzalez*, 549 U.S. 1 (2006). Although this Court could affirm on alternate grounds, both these rationales are meritless.

Sovereign immunity does not bar prospective relief enjoining unlawful conduct, *Ex parte Young*, 209 U.S. 123, 159-61 (1908), and "the inquiry … under [*Young*] does not include an analysis of the merits[.]" *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.,* 535 U.S. 635, 645 (2002). Moreover, counties lack sovereign immunity unless acting as arms of the state. *Northern Ins. Co. v. Chatham Cty.*, 547 U.S. 189, 193-95 (2006). Counties are not arms of the state here, but—if they were— county officers nonetheless could be sued under *Young*.

*Purcell*, 549 U.S. at 4-5, may have barred **injunctive relief** for 2022, but the complaint sought additional relief (*e.g.*, damages, **future** elections). *Purcell* cannot justify **dismissal**.

### CONCLUSION

This Court should recall the mandate, reverse, and remand for expedited proceedings.

Dated: June 6, 2024                     Respectfully submitted,


                                        /s/ Kurt B. Olsen
                                        _____
                                        Kurt Olsen
                                        (DC Bar No. 445279)
                                        Olsen Law, P.C.
                                        1250 Connecticut Ave, NW
                                             Suite 700
                                        Washington, DC 20036
                                        (202) 408-7025
                                        ko@olsenlawpc.com

                                        *Attorney for Appellants*
                                        *Kari Lake and Mark Finchem*

<u>**CERTIFICATE OF COMPLIANCE**</u>

1.    The accompanying motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) and Circuit Rule 27-1(1)(d) because the motion contains 5,200 words and 24 pages, including footnotes, but excluding the parts of the motion exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    The accompanying motion complies with the typeface and type style requirements of Fed. R. App. P. 27(d)(1)(E) because the motion has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Times New Roman 14-point font.

Dated: June 6, 2024                              Respectfully submitted,

                                                 /s/ Kurt B. Olsen
                                                 _____
                                                 Kurt Olsen
                                                 (DC Bar No. 445279)
                                                 Olsen Law, P.C.
                                                 1250 Connecticut Ave, NW
                                                      Suite 700
                                                 Washington, DC 20036
                                                 (202) 408-7025
                                                 ko@olsenlawpc.com

                                                 *Counsel for Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that on June 6, 2024, I electronically filed the foregoing document—together with its addendum—with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the appellate CM/ECF system, causing the service on counsel for the parties to this action via electronic means.

/s/ Kurt B. Olsen
Kurt Olsen